COUNTY OF OKEECHOBEE, *et al.,* Appellants, v. THE FLORIDA NATIONAL BANK OF JACKSONVILLE, *et al.,* Appellees.

1 So. (2d Series) 263
Division A
Opinion Filed January 19, 1940
On Rehearing Granted March 7, 1941
Rehearing Denied April 7, 1941

George P. Garrett, for Appellants;

Wm. H. Rogers and C. C. Bailey, for Appellees.

BUFORD, J.—This case has made its appearance here before in County of Okeechobee v. Florida National Bank, 112 Fla. 309, 150 Sou. 124, and in Florida National Bank v. County of Okeechobee, 117 Fla. 262, 157 Sou. 570. Another phase of litigation predicated on this same transaction made

its appearance here in Carlton, Governor, for Use and Benefit of Okeechobee County v. Detroit Fidelity & Surety Co., 112 Fla. 644, 151 Sou. 328.

On April 10, 1927, the Florida National Bank of Jacksonville, the Peoples Bank of Okeechobee and the Board of County Commissioners of Okeechobee County entered into the following contract:

"This agreement entered into this 10th day of April, A. D. 1927, by and between Florida National Bank of Jacksonville, Florida, Peoples Bank of Okeechobee, Florida, and Board of County Commissioners of Okeechobee County, Florida, has for its purpose the following:

"In consideration of the loan to the People's Bank of Okeechobee by the Florida National Bank of Jacksonville of $300,000.00 of obligations of the United States of America, and other bonds as represented by Custodian's Receipts Nos. 1424, for $28,000.00, 4010 for $50,000, 4113 for $10,000, 4142 for $100,000 and 4143 for $75,000, 4150 for $25,000, and 4151 for $25,000 of the Jacksonville Branch of the Federal Reserve Bank of Atlanta, Georgia, assigned to the Board of County Commissioners of Okeechobee County, the Peoples Bank of Okeechobee has directed that the proceeds of the Okeechobee County Road No. 29 Bond Issue amounting to approximately $500,000.00 be deposited with the Florida National Bank of Jacksonville, in an account designated 'Peoples Bank of Okeechobee.' It is understood that the bonds referred to are to secure the aforesaid deposit and said funds so deposited are to be withdrawn from the Florida Bank of Jacksonville, by the Peoples Bank of Okeechobee, or to be withdrawn by the County Commissioners of Okeechobee County, from the Peoples Bank of Okeechobee, only upon surrender by the Board of County Commissioners of Okeechobee County, to the Florida National Bank of Jacksonville, through the

Peoples Bank of Okeechobee, of the Custodian's Receipts in the following manner:

"None of said Custodian's Receipts shall be released by said Board of County Commissioners until the aforesaid deposit with the Florida National Bank of Jacksonville has been reduced, by withdrawals therefrom by the Peoples Bank of Okeechobee, to a sum equal to the face value of all said Custodian's Receipts ($300,000.00). Thereafter the said Custodian's Receipts shall be surrendered and released by the Board of County Commissioners of Okeechobee County, through the Peoples Bank of Okeechobee, to the Florida National Bank of Jacksonville, in blocks of $50,000.00 face value. When the deposit described herein has been reduced to $300,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $250,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $200,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $150,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $100,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $50,000.00 the remainder of the Custodian's Receipts shall be released as prescribed herein by the Board of County Commissioners of Okeechobee County to the Florida National Bank of Jacksonville through the Peoples Bank of Okeechobee.

"It is agreed between the parties hereto that the Custodian's Receipts referred to herein shall be kept in a vault for safekeeping, preferably in a lock box on which two keys are required to open, and it is further understood that in the event all or any portion of said Custodian's Receipts are lost or misappropriated by the officials to whom they are delivered by the Peoples Bank of Okeechobee, then the

500

Florida National Bank of Jacksonville shall deduct from the said deposit a sum equivalent to the par value of such said Custodian's Receipts as are so lost or misappropriated."

The contract was signed by representatives of all three parties thereto and attested by the clerk of the court.

In 1926 the people of Okeechobee County voted in favor of issuing $525,000.00 of bonds for the purpose of widening, reconstructing, grading and hard-surfacing the Okeechobee-Fort Drum road, State Road No. 29. The bonds were issued and sold for $95.07 plus accrued interest to date of delivery, making an aggregate total of $503,580.00. But the Florida National Bank was unable to collect on $25,000.00 of the bonds and returned them to the Peoples Bank of Okeechobee. Thereafter the Legislature enacted Chapter 13178, Acts of 1927, which after providing for abolition of the Board of Bond Trustees of Okeechobee County contained the following provisions for disposition of funds held by them:

"Sec. 2. That all Boards of Bond Trustees in Okeechobee County, Florida, heretofore appointed in connection with the issuance of County Bonds are hereby authorized and directed to pay to the Bank in Okeechobee County qualified as depository for County Funds, all moneys and all funds entrusted to, or held by, said Bond Trustees in connection with any and all bonds heretofore issued by the County of Okeechobee, said funds to be paid over to said County Depository on or before July 1st, A. D. 1927. . . .

"Sec. 4. That the proceeds of the sale of all County Bonds and of all Special Road and Bridge District Bonds hereafter issued in Okeechobee County, Florida, and the interest and sinking fund therefor shall be deposited in banks in Okeechobee County, Florida, qualified as County Depositories, and said funds dispersed as now provided, or as may be hereafter provided by general law governing the handling of County funds other than bond funds."

The Act was approved April 12, 1927.

The proceeds of the bond sale were then placed in the Peoples Bank of Okeechobee, which had theretofore been designated as a county depository for the year 1927. The tri-partite agreement had been entered into on April 10, 1927, and the proceeds of the bond sale were handled to that agreement. After the parties had been operating under said agreement for over two years, the Peoples Bank of Okeechobee was closed by order of the State Comptroller, while there remained unexpended in said fund in the Peoples Bank of Okeechobee the sum of $91,361.54; and while there was a balance to the credit of Peoples Bank of Okeechobee in the Florida National Bank of $19,955.19. On August 1, 1939, the Florida National Bank paid to the Receiver of the Peoples Bank of Okeechobee $9,955.19. On August 10, 1929, the remaining $10,000.00 of securities were turned over to the Receivers of the Peoples Bank of Okeechobee by the Clerk of the Board of County Commissioners, and by the Receivers delivered to the Florida National Bank, and $10,000.00 was paid by the Florida National Bank to the Receivers of the Peoples Bank.

On August 27, 1931, the Board of County Commissioners of Okeechobee County brought their bill of complaint against the Florida National Bank of Jacksonville and the liquidator of the Peoples Bank of Okeechobee, praying that the court construe the trust agreement of April 10, 1927, and determine the rights of the parties; that the court find that the $50,000.00 of securities pledged by said trust agreement and withdrawn on March 16, 1929, as well as the $50,000.00 in securities withdrawn on May 6, 1929, were improperly withdrawn and that they or their value be returned to plaintiffs; that the court find that the Florida National Bank is indebted to Okeechobee County not only for the principal amount of said sum but also for interest

from June 5, 1929; that defendants make full discovery of the records relating to transactions alleged in the bill; that the court enforce the trust relationship against the defendants; and that the court award the plaintiffs such other and further relief as the circumstances may develop to be equitable and as to the court will seem equitable.

The Florida National Bank of Jacksonville and the liquidator of the Peoples Bank of Okeechobee each filed a separate motion to dismiss. The chancellor entered his order dismissing the bill as to the Florida National Bank because it did not waive its privilege of being sued in Duval County by filing a general appearance; and because the provisions of the Federal statute, 12 U. S. C. A. 94, are mandatory and not permissive.

On appeal here the order of the chancellor was reversed because both Florida National Bank and Peoples Bank were indispensable parties to the suit and the suit could have been properly begun either in Duval County or Okeechobee County. It was likewise pointed out that the county commissioners do not have authority to contract outside the county, and the Florida National Bank by contracting with these parties waived the right to be sued in Duval County. See County of Okeechobee v. Florida National Bank, 112 Fla. 309, 150 Sou. 124.

Thereafter the Florida National Bank filed its motion to dismiss, embodying other grounds, and its motion for better particulars. On December 28, 1933, the chancellor denied both motions and allowed defendant until January 18, 1934, in which to answer the bill of complaint.

On appeal here, the order of the Chancellor in this regard was affirmed. See Florida National Bank v. County of Okeechobee, 117 Fla. 262, 157 Sou. 570.

Thereafter, the defendant, Florida National Bank, filed its answer to the bill, which after answering the allegations

of the bill, set up as affirmative defenses, (1) restitution, (2) performance by payment, (3) that the last $50,000.00 of bond funds were not to be secured and (4) equitable estoppel.

A motion to strike portions of the answer was granted in part and denied in part.

After the chancellor overruled the motion of the liquidator of the Peoples Bank of Okeechobee to dismiss the bill of complaint, with leave to answer within ten days, the liquidator answered the bill of complaint.

Counsel for the respective parties stipulated on the record as to many of the facts involved in the controversy, among which are the following:

"12. The proceeds of the sale of State Road No. 29 Bonds deposited as aforesaid, were carried by the County of Okeechobee in a checking account in the Peoples Bank of Okeechobee to the credit of said County, and the Peoples Bank of Okeechobee in turn carried a portion of the proceeds of the sale of said bonds in a checking account in the Florida National Bank of Jacksonville to the credit of the Peoples Bank of Okeechobee.

"13. By reason of the lack of even denominations, The Florida National Bank of Jacksonville actually delivered to Peoples Bank of Okeechobee, who in turn delivered to the County of Okeechobee, $313,000.00 of securities, which securities were represented by safekeeping receipts issued by the Federal Reserve Bank of Atlanta, Georgia, Jacksonville Branch. Through substitutions made of certain receipts, the aggregate amount of securities was prior to July 3, 1928, reduced from $313,000.00 to $310,000.00. Said securities or safekeeping receipts were thereafter released as follows: . . .

"(5) On March 16, 1929, $50,000.00 of said securities were manually turned over by the Clerk of the Board of

County Commissioners of the County of Okeechobee pursuant to resolution of the Board of County Commissioners thereof, to the Peoples Bank of Okeechobee, and by the latter in turn forwarded to the Jacksonville Branch of the Federal Reserve Bank and by the latter in turn delivered to the Florida National Bank of Jacksonville. That at the time of the surrender of said securities State Road No. 29 bond account to the credit of the County.in Peoples Bank of Okeechobee, showed a balance of $169,573.54.

"At the time of the release of the securities last mentioned, the balance on deposit in the Florida National Bank to the credit of Peoples Bank of Okeechobee, had been reduced by withdrawals by the Peoples Bank of Okeechobee to the sum of $163,829.88, which balance consisted not only of a portion of the proceeds of the sale of said bonds, but of various other moneys deposited from time to time in the regular course of banking business in the Florida National Bank by Peoples Bank of Okeechobee.

"(6)   On May 6, 1929, $50,000.00 of said securities were manually turned over by the Clerk of the Board of County Commissioners of the County of Okeechobee, pursuant to the resolution adopted by the three County Commissioners attending the meeting held at 5:45 P. M. on May 6, 1939, hereinafter set out in paragraph .23 hereof, to the Peoples Bank of Okeechobee by the Clerk, and were by .the Peoples Bank of Okeechobee in turn delivered to the Florida National Bank of Jacksonville. At the time of the surrender of said securities State Road No. 27 bond account to the credit of the County in Peoples Bank of Okeechobee showed a balance of $108,432.97.

"At the time of the release of the securities last mentioned, the balance on deposit in the Florida National Bank to the credit of Peoples Bank of Okeechobee, had been reduced by withdrawals by the Peoples Bank of Okeechobee to the sum

of $139,855.90, which balance consisted not only of a portion of the proceeds of the sale of said bonds, but of various other moneys deposited from time to time in the regular course of banking business in The Florida National Bank by Peoples Bank of Okeechobee.

"(7)   At the time Peoples Bank of Okeechobee closed on or about June 5, 1929, State Road No. 29 bond account to the credit of the County in said Peoples Bank, showed a balance of $91,361.54.

"At the time of the closing of said Peoples Bank, the balance on deposit in the Florida National Bank to the credit of Peoples Bank of Okeechobee had been reduced by withdrawals by the Peoples Bank of Okeechobee to the sum of $19,955.19, which balance consisted not only of a portion of the proceeds of the sale of said bonds, but of various other moneys deposited from time to time in the regular course of banking business in The Florida National Bank by the Peoples Bank of Okeechobee.   Of said balance, the sum of $9,955.19 was thereafter, on August 1, 1929, paid over by the Florida National Bank of Jacksonville to the Receivers of the Peoples Bank of Okeechobee.

"(8)   On  or  about  August 10, 1929, the remaining $10,000.00 of said securities were manually turned over by the Clerk of the Board of County Commissioners of the County of Okeechobee to the Receivers of Peoples Bank of Okeechobee and by the latter in turn delivered to The Florida National Bank of Jacksonville, at which time the remainder of the deposit in The Florida National Bank to the credit of Peoples Bank of Okeechobee, to-wit, the sum of $10,000.00 was paid over by said The Florida National Bank to the Receivers of said Peoples Bank of Okeechobee, and by said Receivers in turn paid to said County.

"That on August 10, 1929, the account of the Peoples Bank of Okeechobee, with the Florida National Bank, was

finally closed and from and since August 10, 1929, the said The Florida National Baik has not had and does not now have any money, funds, credits or deposits of any nature or kind whatsoever, theretofore received from said Peoples Bank of Okeechobee." . . .

"(10) That the respective balances to the credit of County of Okeechobee in the Peoples Bank of Okeechobee, in said Road No. 29 bond account, set forth in subparagraphs (1), (2), (3), (4), (5), (6) and (7) above, are ascertained by adding to the original deposit of $503,580.00 made by the County in said Peoples Bank on March 21, 1927, the aforesaid additional deposit thereto made by the County on June 1, 1928, in the sum of $31,500.00, and also the aforesaid additional deposit thereto made by the County on December 31, 1928, in the sum of $2,439.50 and deducting from the total of said amounts the County Warrants drawn against said deposit (shown in detail in paragraph 32 of this stipulation) and paid by said Peoples Bank of Okeechobee.

"That said additional deposit of $31,500.00 to said account was made under the following circumstances:

In May, 1927, the County Commissioners of Okeechobee County withdrew from said account by their Warrant No. 718 the sum of $15,789.33, ($15,750.00 thereof being interest on State Road No. 29 Bonds and $39.33 being fees to the paying agent) and again in November, 1927, said County Commissioners withdrew from said account by their Warrant No. 795, the sum of $15,789.37 ($15,750.00 thereof being interest on State Road No. 29 Bonds and $39.37 being fees to the paying agent), making a total withdrawn from said account of $31,578.70.

"On June 1, 1928, said County Commissioners deposited to said account said sum of $31,500.00 by their Warrant drawn against another account in said Peoples Bank of

Okeechobee comprising the proceeds of $98,000.00 of refunding bonds issued in the year 1928 (said refunding bonds not being issued in refunding said State Road No. 29 bonds).

"That said additional deposit of $2,439.50 to said account was made under the following circumstances:

"Same was a credit to said account given by said Peoples Bank of Okeechobee to said County of Okeechobee for interest upon said account." . . .

"22. On May 6th, A. D. 1929, the Board of County Commissioners of Okeechobee County, Florida, met in regular monthly session at 10 A. M., the minutes of which meeting disclose the following (Quoting from Minutes.):

" 'Mr. D. R. McNeill appeared before the Board and asked for the release of a $50,000.00 block of bonds as security on Road 29 Bond fund, which was discussed by the Board and as this fund showed a balance of approximately $91,000.00 after deducting warrants authorized at the present meeting and bonds held as security totaling only $60,000.00 this request was tabled and carried over to the regular meeting in June. On Motion the Board adjourned.'

"23. Thereafter, on May 6th, A. D. 1929, at 5:45 P. M. three members of said Board, without notice to the other members of said Board, held a meeting, the minutes of which meeting disclose the following (Quoting from Minutes, May 6, 1929):

" 'The Board of County Commissioners was called to order by the Chairman May 6th, A. D. 1929, at 5:45 P. M. Present Chairman Potter, Commissioners Bass and Hair, J. L. Barber, Clerk. The following resolution was presented by Commissioner Hair, who moved its adoption and upon being seconded by Commissioner Bass and all mem-

bers present voting AYE, was unanimously passed and adopted in regular open session:

" 'RESOLUTION

" 'Whereas, the credit balance of State Road 29 funds have decreased to a figure entitling the depository to a release of fifty thousand dollars of the Bonded securities, and

" 'Whereas, by May 15th, 1929, the said depository will have paid a sum from the said 29 funds sufficient to entitle said depository to the balance of said bonded securities in an amount to ten thousand dollars,

" 'Now, Therefore, Be It Resolved that .the Board of County Commissioners, through its Chairman, release to the depository the balance of the bonded securities, in the amount of sixty thousand dollars, now held by the said Board, and that the Chairman be, and he is hereby authorized to execute the proper release and deliver same to the said depository.

" 'Passed and adopted in regular and open session of the Board of County Commissioners of Okeechobee County, Florida, this Sixth day of May, A. D. 1929.

" 'W. W. Potter, Chairman

" 'Q. J. Bass

" 'S. A. Hair

" 'Commissioners.

" 'On Motion the Board adjourned.' "

In the case of Carlton, Governor, for Use and Benefit of Okeechobee County, v. Detroit Fidelity & Surety Co., 112 Fla. 644, 151 Sou. 328, we held that for the Commissioners to vote for withdrawal of securities in violation of the contract agreement was a breach of official duty, for which both they and the sureties on their official bonds are liable.

After testimony was taken before the special master the

chancellor entered final decree in the cause, which, after reciting the facts, contained the following:

"The case has been before the Supreme Court of Florida on two occasions, and the decisions rendered therein appear at 150 Sou. 124 and 157 Sou. 570. In the latter the Court held that the Florida National Bank of Jacksonville was acting without authority in entering into the contract, and that the liability, if any, of each bank should be determined on the issue and proof. The Court did not, however, determine that there was any liability on the part of either bank.

"This court is of the opinion that the complainants have proven the allegations of the bill of complaint and that the defense of the defendant, the Florida National Bank of Jacksonville, appearing in paragraph XXXVI of the answer has been established by proof also. Inasmuch as the complainants stand on the tri-party agreement, and keeping in mind the ruling of the Supreme Court, this court feels that there was no responsibility on the part of the Florida National Bank for Fifty Thousand Dollars of the remainder because when the deposit reached that sum all securities were to be returned to it. It is shown in the evidence that during the course of dealing between the two banks $33,939.50 was withdrawn from the proceeds of the bond issue for Road No. 29 and that subsequently the Board of County Commissioners redeposited this sum from another account with the Peoples Bank of Okeechobee. The Court understands that in fixing the amounts of balance due from time to time this sum was included. The Florida National Bank of Jacksonville had no control over the manner in which the moneys were expended, therefore, it does not seem that this institution should be held responsible for additional sums placed from other accounts into Road No. 29 Bond Fund subsequent to the execution of the tri-party

agreement. The total of their re-deposits, the amounts paid by the Florida National Bank of Jacksonville to the Receivers and the Fifty Thousand Dollars to which reference is made above, is more than the deposit in the Peoples Bank of Okeechobee at the time it closed.

"In all these circumstances this court feels that the Complainants can have relief only against the Peoples Bank of Okeechobee, and the fact that that bank has closed is not justification for fixing the full liability against the Florida National Bank of Jacksonville. It should be borne in mind that the Florida National Bank of Jacksonville is a banking institution with headquarters in Jacksonville, Florida, and that the two other parties to the tri-party agreement were the County and a banking institution located at the county seat; that from time to time withdrawals were made by the Board of County Commissioners and securities released by them, through the resident bank; that the Florida National Bank did not participate in the negotiations with the Board of County Commissioners of May 6th, 1929; that the Board of County Commissioners filed its claim with the receivers of the Peoples Bank for the balance in the State Road No. 29 Bond Fund, and that the Supreme Court has held that the original contract was *ultra vires.*

"The circumstances above related should be given great weight in a court of equity, and the court feels that to fix responsibility on the Florida National Bank for the amount of the deposit in the Peoples Bank of Okeechobee at the time it closed would work an injustice.

"With regards to the responsibility of the Peoples Bank of Okeechobee, the court feels that the said Peoples Bank of Okeechobee is liable for the closing balance referred to, $81,361.54, and that the only question remaining to be determined now is whether or not the claim which was filed by the County with the Peoples Bank of Okeechobee is a

common or preferred claim. This court retains jurisdiction of this cause with regards to that single issue.

"The Bill of Complaint is therefore dismissed as to The Florida National Bank of Jacksonville at the costs of Complainants and without prejudice to any rights the Complainants may have against the Peoples Bank of Okeechobee."

From this final decree appeal was taken.

The first question presented is whether or not the chancellor should have eliminated from consideration the additional deposits of $31,500.00 and $2,439.50, or whether such deposits should have been included in computing the amount due the County of Okeechobee.

The stipulation of the parties quoted above states in effect that $31,578.70 was withdrawn from State Road No. 29 bond fund to pay interest on State Road No. 29 bonds and fees to the paying agents, the withdrawals taking place in May and November, 1927, and in June, 1928, $31,500.00 was redeposited in the State Road No. 29 bond fund.

Mr. J. L. Barber, clerk of the circuit court, gave the following testimony as to the withdrawals and redeposit of the $31,500.00:

"Q. Now referring you to the photostat of the 'Statement of Receipts and Disbursements of the February 1st, 1927, Road Bond Fund, known as Road Twenty-Nine Bond Fund, issue of February 1st, 1927, $525,000.00 Okeechobee County, Florida, copy of which has been attached to the stipulation,—I will ask you to point out to the gentlemen representing the bank and mark with a pencil so it can be found later on this photostat, the two entries, withdrawals, for interest which was paid on this $31,500.00, and the entry showing this transfer so you can explain how it came up.

"A. One entry of May 30th, 1927, for $15,789.33; mark an 'X' after it.

"Q. What's the other entry?

"A. One entry of November 28th, 1927, for $15,789.37; mark an 'X' after it.

"Q. Those were withdrawals from that Road Bond Fund, were they?

"A. Yes, sir.

"Q. What were those withdrawals for?

"A. Withdrawals for six per cent interest.

"Q. On what?

"A. Road Twenty-nine Bond Fund.

"Q. Was that done pursuant to order of the Board?

"A. Yes, sir. I suppose it was, it was before my time as Clerk.

"Q. Refer to the item, $31,500.00 showing a deposit in that fund. That deposit seems to be dated June 1st, 1928.

"A. Repayment of interest, $31,500.00.

"Q. Mark it. (Witness marking entry with pencil.)

"Q. Explain why the difference of a very small amount in those two withdrawals above.

"A. It is customary to charge a fee for handling and in this case it was evidently 35 cents and 37 cents.

"Q. The repayment is complete, except for those two particular charges?

"A. Yes, sir.

"Q. I understand then that the County repaid the Road Bond Fund $31,500.00 for two withdrawals, which they regarded as temporary, to pay interest on those bonds?

"A. Yes, sir.

"Q. Ordinarily what was the interest on those bonds paid from, from those bonds or taxes?

"A. From taxes.

"Q. The interest came due before you had the taxes to pay it?

"A. Yes, sir.

"Q. They were withdrawals out of the fund and you repaid with the fund?

"A. Yes, sir."

It appears that the $31,500.00, deposit of June, 1928, was properly credited to the bond fund of State Road No. 29, because it had been previously borrowed by the county to pay interest on the bonds, which interest was usually paid from taxes, and when the taxes came in the bond fund was repaid the amount that had been borrowed to pay interest. It cannot be said that either bank escaped liability for this item of $31,500.00 merely because a loan had been made from the bond fund for a short period, until sufficient amount of taxes had been collected to repay it.

The item of $2,437.50 credited to the bond fund account was interest paid the fund for maintaining a stated balance for a given period of time. Claude E. Simmons, former clerk of the circuit court, gave the following testimony as to this item:

"Q. Mr. Simmons, there are two items here concerning which you can probably help us. There is an item of deposit in this bond fund of the sum of $2,439.50.

"A. What date was that deposited?

"Q. About December 31st, 1928. I will tell you exactly in just a minute. It is shown here on photostat of the bank's records. I just want you to tell me what that item was. Look here a minute. 'December 31st, Deposit, Interest, $2,439.50.' (Indicating on records.)

"A. That's interest on daily balance paid by the Peoples Bank of Okeechobee to the County Commissioners, credited to that particular fund.

"Q. The Peoples Bank of Okeechobee was required to pay two per cent daily balance, is that correct?

"A. On that particular fund they were, yes sir.

"Q. And this is money earned by that fund being deposited in the Peoples Bank, is that right?

"A. Yes, sir."

This item of $2,439.50 was interest paid by the Peoples Bank of Okeechobee on the daily balance in the bond fund of State Road No. 29. This interest was required by statute to be paid by any bank designated as county depository. See Sec. 2405 C. G. L. Therefore, since it was part of the statute law of the State at the time the agreement was entered into, it should have been in the contemplation of the parties, and the statute law became part of the contract. The deposit credit of interest should properly be considered as part of the bond fund. Therefore the chancellor erred in that part of his final decree where he stated that "the defense of the defendant, the Florida National Bank of Jacksonville, appearing in paragraph XXXVI of the answer has been established by proof also," as paragraph XXXVI of the answer related to the two additional deposits hereinabove referred to, made to the bond fund of State Road No. 29, and which the answer claims was not protected under the contract.

The second and third questions presented by appellant relate to the liability to be imposed on the respective banks.

When this case was before us in Florida National Bank of Jacksonville v. Okeechobee County, 117 Fla. 262, 157 Sou. 570, we said:

"And so it is that the pledge of the securities by Florida National Bank either to secure a deposit coming to it as a banking institution or to guarantee the safety of such deposit in another bank, was at the time the contract was made, *ultra vires* and unenforceable.

"This conclusion, however, does not dispose of the case because the bill of complaint alleges that pursuant to this agreement the funds were deposited with the two banks and withdrawn therefrom as is set out in the original above referred to, but that a certain part of that fund remained on deposit and undelivered to the owners thereof.

"Neither Florida National Bank nor Peoples Bank of Okeechobee acquired any title to the fund because they acquired the fund by an *ultra vires* act and, therefore, when that fund passed into the hands of either or both of the banks it passed as a constructive or resulting trust and the banks thereby became jointly trustees of whatever sums of money passed into both banks and both banks became bound to discharge the trust by return of the fund to the *cestui que* trust."

The opinion did not determine whether any liability on the part of either or both banks existed; but it did hold than when the bond fund passed into the hands of *either* or *both* banks, it passed as a *constructive* or *resulting trust,* and the banks thereby became *jointly trustees* of whatever sums of money passed into both banks, and both banks became bound to discharge the trust by *return of the fund to the cestui que trust.*

The Peoples Bank of Okeechobee was the sole county depository in Okeechobee County, and was enabled to qualify as such, in this instance, by making arrangements with the Florida National Bank of Jacksonville, such as it made by the agreement of April 10, 1927, whereby the Florida National Bank furnished the securities necessary to make the required "satisfactory deposit." Thus the Florida National Bank was an active party to the agreement of April 10, 1927, and is estopped to deny that fact, or to state that it was only passively interested in the return of the securities which were returned by virtue of the meeting of the

three County Commissioners, without notice to the other two.

The redeposit of the $31,500.00 and the credit of $2,439.50 are included within the terms of the contract of April 10, 1927, and are intended to be protected by the securities deposited by Florida National Bank. The stipulation shows that on May 6, 1929, when the $50,000.00 of securities were improperly released by the three members of the Board of County Commissioners who held a meeting for that purpose without notifying the other two commissioners, neither bank was entitled to secure the release under the terms of the contract. The Florida National Bank cannot be heard to plead ignorance as to this because it was held to be a joint trustee with the Peoples Bank of Okeechobee after the contract was held to be *ultra vires* as to it. The Peoples Bank of Okeechobee secured the improper release from these three commissioners in meeting assembled, and the Florida National Bank accepted the release, though improper. Under the terms of the contract, at the time the Peoples Bank became insolvent and closed its doors, the County of Okeechobee was entitled to have at least $50,000.00 in securities to protect this fund.

Since we have held the contract to be *ultra vires* as to the Florida National Bank, the result is that the securities could not lawfully be pledged to secure the deposit; without the securities the Peoples Bank of Okeechobee could not qualify as a depository of the county, and the deposit was an unlawful deposit of county funds. A note in 5 L. R. A. (N. S.) 886, contains the following:

"Right to preference is respect of public funds deposited in bank which subsequently becomes insolvent:—Except that it furnished an additional ground for allowing a preference in favor of the county out of the assets of the insolvent bank, the fact that in Page County v. Rose (case reported herein)

the taxes in question were paid directly to the bank by the taxpayer does not differentiate the case from the familiar class of cases where public moneys have, without authority of law, been deposited in a bank and mingled with the general funds of the bank. That funds deposited under such circumstances, at least if their character is known to the bankers, are impressed with a trust and, assuming the existence of the other necessary conditions, are entitled to a preference over the general creditors of the bank, is held or conceded by practically all the authorities on the subject; though, as subsequently shown, the preference, even under such circumstances, has been denied in a few cases because of the inability to trace any of such funds into the assets that came into the hands of the receiver or assignee of the bank. The question whether the ability thus to trace or identify the funds is a condition of the right to a preference in favor of trust funds is, of course, practically the same whether the trust arises from the unauthorized deposit of public, or of private, funds; and therefore no attempt is made here to discuss that subject, although the position on the point taken in cases dealing with public funds is incidentally stated in connection with the decisions on the general question as to the right of such funds to a preference. . . .

"In San Diego County v. California Nat. Bank, 52 Fed. 59, where the treasurer and tax collector of a county, without authority and contrary to law, deposited funds which the bank knew belonged to the county, and received certificates issued to them as treasurer and tax collector respectively, it was held that the funds, although mingled with the general funds of the bank, continued impressed with a trust in favor of the county, and upon the insolvency of the county (bank) were entitled to a preference over the claims of general creditors, although the identity of the trust funds had been lost.

"City funds received on deposit by a banker, but redeposited by him in other banks under an agreement for sharing in the deposits, under which he is to receive from them the same interest that he pays the city, and agrees that they shall be drawn only to pay city orders, are held in trust for the city as against his assignees for creditors. Marquette v. Wilkinson, 119 Mich. 413, 43 L. R. A. 840, 78 N. W. 474. In this case, of course, there was no difficulty in tracing or identifying the trust funds.

"A similar result was reached in *In re:* Salmon, 145 Fed. 649, the facts of which present a striking similarity to those involved in the last case. In the Salmon case, however, the decision was upon the ground that, under the agreement between the banks, which was substantially the same as that involved in the Marquette case, the bank to which the public funds were awarded, and which subsequently became bankrupt, was in legal effect the agent of the bank in which the funds were redeposited, and that the latter was in contemplation of law the principal debtor of the county, and therefore the county was entitled to recover the funds so redeposited as against the general creditors of the bankrupt bank." . . .

"In some cases a preference has been allowed in favor of public funds notwithstanding that the funds were treated as a general deposit, apparently upon the ground that under the statutes the official who deposited the funds had only authority to make special deposit, and no authority to make a general deposit; and that the funds were therefore for the purpose of allowing a preference, to be regarded as a special deposit notwithstanding that they had been actually treated otherwise by the bank. This seems to be the ground of the decision in State v. Thum, 6 Idaho 323, 35 Pac. 858, holding that public money deposited by the state treaturer as such becomes a trust fund, and not part of the funds of

the bank and that in case of the insolvency of the bank its receiver must treat the funds as the property of the state, and not of the bank. So, in Fogg v. Bank of Friar's Point, 80 Miss. 750, 32 Sou. 285, the court said that a deposit by a tax collector in a bank is a trust fund from its nature and character, as well as by the express declaration of Section 3077 of the Code of 1892; and the fact that the funds have become intermingled with other moneys of the bank, and that, in consequence of the confusion, the right to a particular individual asset can not be asserted, does not deprive the tax collector of a right of priority of payment out of the mass of assets. In First Nat. Bank v. Bunting, 7 Idaho 27, 59 Pac. 929 (Rehearing denied in 59 Pac. 1106) the court reaffirmed and reapplied the principle laid down in State v. Thum, *supra,* and further held that a county whose funds have been unlawfully deposited in a bank is not estopped from claiming the same as a trust fund by reason of the fact that its treasurer has received a *pro rata* payment thereon with general creditors. In neither this case nor the Thum case was any point made as to identifying or tracing the trust fund."

"A bank acquires no title to funds of the public deposited with it by a county treasurer in violation of law; and such funds are entitled to a preference out of the assets in the hands of a receiver of the bank, so far as they can be identified or traced into property which has come into his hands. Crawford County v. Strawn, 15 L. R. A. (N. S.) 1100, 157 Fed. 49." L. R. A. (N. S.) 918, note.

The contract being *ultra vires* as to the Florida National Bank, neither bank acquired any title to the deposit, and a duty remained on both banks, as joint trustee of the fund, to see that it was returned to the *cestui que* trust, the County of Okeechobee. This duty could not be fulfilled by the Florida National Bank by merely paying the money to the

other joint trustee, or the liquidator of the other joint trustee, but the duty still existed to see that the money is returned to the *cestui que* trust, due consideration being given to the fact that the banks were held to be constructive or resulting trustees and not voluntary trustees of the fund. If the contract had been valid and enforceable, the Florida National Bank would have been jointly liable with the Peoples Bank for at least $50,000.00 of the deposit, because the last $50,000.00 of securities was improperly released. The trust relationship, which is imposed by law, cannot make them less liable in any degree than they would be under the contract.

Therefore, we think that the final decree below should be reversed and the cause remanded, so that the chancellor may, in the light of the premises established herein which alter some of the premises in the final decree, make his findings and conclusions as to what amount of liability should be attributed to the joint trustee banks.

It is so ordered.

TERRELL, C. J., WHITFIELD and BROWN, J. J., concur.

CHAPMAN, J., dissents.

THOMAS, J., disqualified.

CHAPMAN, J. (dissenting)—The record here clearly shows that the Florida National Bank, in good faith and in the usual course of business, treated the stipulation dated May 6, 1929, as a legal and binding obligation of the County of Okeechobee and exercised all diligence required of it by law. The County of Okeechobee, through the county commissioners, presented its claim to the liquidator of the Peoples Bank of Okeechobee for the entire amount of the deposit, and the closing of this bank is the cause of the suit at bar.

The facts as shown by the record do not justify the

conclusion of the liability of the Florida National Bank. The redeposit item in the sum of $31,500.00, and the interest item in the sum of $2,439.50, are likewise claims that should be presented to the liquidator of the Peoples Bank of Okeechobee. I have before me the previous decisions of this Court in the case at bar as reported in 112 Fla. 309, 150 So. 124; 112 Fla. 644, 151 So. 338; 117 Fla. 262, 157 So. 570. If Okeechobee County has a preferred claim against the Peoples Bank, it can be adjudicated in the court below.

The interest claim in the sum of $2,439.50 credited to the account of Okeechobee County on the books of the Peoples Bank, when the item was never placed with the Florida National Bank, is a claim to be collected out of the Peoples Bank and no facts appear to show a liability therefor on the part of the Florida National Bank.

The record shows that in May, 1927, the county drew the sum of $15,789.33 out of the bond account, and in November, 1927, the sum of $15,789.37 was withdrawn, and these sums were used to pay two installments of interest on District 29 road bonds. The legal authority for withdrawing these sums and applying them to the payment of two installments of interest on District 29 bonds has not been shown. The County of Okeechobee, by these transactions, received the benefit of these items, and to extend or construe the triparte agreement so as to include them, to say the least, is inequitable.

The lower court heard the evidence, observed the parties, has had the case before him a number of times and entered a final decree dismissing the bill as against The Florida National Bank. I have studied the record and find there is ample testimony to sustain the decree.

This Court has held, and it is a well established rule, that the findings of a chancellor on appeal will not be interfered

with unless clearly shown to be erroneous. See Farrington v. Harrison, 95 Fla. 769, 116 So. 497; Atlantic Bank, etc., Co. v. Sengstak, 95 Fla. 606, 116 So. 267; Mock v. Thompson, 58 Fla. 477, 50 So. 673; Lucas v. Wade, 43 Fla. 419, 31 So. 231; Kent v. Knowles, 101 Fla. 1375, 133 So. 315, 317.

I think the decree should be affirmed.

## On Rehearing

HUTCHISON, Circuit Judge.—This suit was instituted in Okeechobee County, Florida, in August of 1931 by the County of Okeechobee against the Florida National Bank of Jacksonville and the Liquidator of the Peoples Bank of Okeechobee.

This case comes to this Court on appeal from a final decree rendered by the Circuit Court for Okeechobee County, Florida. The final decree was in favor of the defendant, The Florida National Bank of Jacksonville.

On January 19, 1940, this Court filed an opinion written by Mr. Justice BUFORD reversing the chancellor, Elwyn Thomas, and remanding the cause for further proceedings. Justice Chapman dissented from the majority opinion. A petition for rehearing was filed by the appellee, The Florida National Bank of Jacksonville, which was granted, and the case is before this Court again on rehearing.

By this suit the plaintiff sought to hold The Florida National Bank personally liable for $81,361.54 which Okeechobee County had on deposit in the county depository, Peoples Bank of Okeechobee, and which was lost when the Peoples Bank closed on June 5, 1929.

The Florida National Bank filed its appearance and a motion to dismiss based upon 12 U. S. C. A., Section 94, which confers upon national banks the privilege of being sued in the courts of the county in which the bank is located.

This venue privilege was briefed and argued and an order was entered dismissing the suit as to The Florida National Bank. Thereupon an appeal was taken by the county and the lower court was reversed by a divided Court. See 150 So. 124; 112 Fla. 309.

After the case was remanded on the venue question, The Florida National Bank filed a motion to dismiss the bill on the equities. This motion was denied by the circuit court and from this order an appeal was taken to this Court by the Florida National Bank. This Court affirmed the order of the circuit court. The opinion appears in 157 So. 570, 117 Fla. 262, in which it was stated:

"The extent of the liability of each of the banks is a matter which must be determined either upon pleadings or upon pleadings which present issues and proof submitted in support thereof.

Therefore, we do not undertake at this time to determine whether or not a liability exists on the part of either bank, or, if it does exist, the amount thereof.

"We only here determine that the bill of complaint contains sufficient equity and sufficient allegations to require an answer thereunto."

After the decision of this Court holding the bill of complaint sufficient to require an answer, The Florida National Bank filed its answer to the bill. This answer admitted certain allegations of the bill, expressly denied many of its averments and then set up a number of affirmative defenses.

In order to test the legal sufficiency of the affirmative defenses, plaintiffs filed a motion to strike. The circuit court granted certain parts of the motion to strike but denied the motion as to certain of the affirmative defenses. After the order was entered sustaining as a matter of law, certain of the affirmative defenses contained in the answer, the cause was at issue upon the bill and answer.

Upon stipulations of facts and oral testimony, the case came on for final hearing upon the bill of complaint, the answer thereto, such of the oral testimony as was relevant and admissible and the stipulations of facts.

After the final hearing the case was argued at length, briefs were submitted and after mature consideration, a decree was entered under date of October 18, 1938, dismissing the bill of complaint as to The Florida National Bank. The learned chancellor after relating many of the pertinent facts and circumstances, stated in his opinion as follows:

The circumstances above related should be given great weight in a court of equity, and the court feels that to fix the responsibility on The Florida National Bank for the amount of the deposit in the Peoples Bank of Okeechobee at the time it closed would work an injustice."

The case is now here on appeal from the final decree of the circuit court.

Appellant contends that this Court is limited upon this appeal to the consideration of the reasons advanced by the learned chancellor for his decree, rather than the correctness of the decree itself. On the contrary, appellee contends that said final decree is supported in law and in fact by the record, and upon this appeal must be affirmed; and that, although appellant may show that some of the views taken by the court below were erroneous, nevertheless consideration of the whole record establishes that the decree was unexceptionable, no matter what reasoning the chancellor employed in arriving at his conclusions.

In the early case of Smith v. Croom, 7 Fla. 180 195 (1857) this Court said:

"This Court will always gladly avail itself of the light which may be furnished by the reasoning of the court below, but when it comes to decide, it has to do only with the

conclusions as they are embodied in the judgment or decree —the logic of the judge is beyond its control.

"From a careful review of the authorities, we are satisfied that an appeal in equity is substantially a rehearing of the cause and that the appeal opens the whole case to the respondent in the appellate court; and although the appeal may show that the view taken by the court below was erroneous, yet on the other hand the respondent may argue, and show if he can, that upon the whole case the same result must be attained here." See also, Roe v. Roe, 95 Fla. 488, 117 So. 108 (1928), headnote 5:

"A correct ruling of a chancellor will not be disturbed because of erroneous or wrong reasons assigned therefor, it being with the ruling itself and not with the reasons given therefor with which an appellate court is concerned." Reynolds v. Smith, 49 Fla. 217; Hoope v. Crane, 56 Fla. 395; Bell v. Niles, 61 Fla. 114; Sherlock v. Varn, 64 Fla. 447; Warren v. Warren, 66 Fla. 138; Eli Witt Co. v. Somers, 99 Fla. 592, 127 So. 333; Ritch v. Adams, 102 Fla. 983, 136 So. 718; Knight v. City of Miami, 127 Fla. 585, 173 So. 801; Gulf Coast Title Co. v. Walters, 124 Fla. 134, 168 So. 537.

The bill of complaint iterated and reiterated that a large sum of the county's money was on deposit in The Florida National Bank at the time Peoples Bank closed and at the time of the institution of this suit.

Among other things the bill avers:

"Under the provisions of said trust agreement of April 10, 1927, said funds were on June 5th, 1929, and have ever since been, on deposit in The Florida National Bank of Jacksonville, Florida. . . ."

"Said moneys being on deposit in the Florida National Bank of Jacksonville, Florida, pursuant to said agreement of April 10, 1927, as trust funds belonging to said County,

of Okeechobee, were not affected by the closing of the Peoples Bank of Okeechobee, Okeechobee, Florida, but are, or should be, in the Florida National Bank . . ."

". . . On the 5th day of June, A. D. 1939, thè said The Florida National Bank of Jacksonville, Florida, declined to honor any further drafts, warrants, claims, vouchers, cheques or orders on said account. . . ."

". . . The said The Florida National Bank of Jacksonville, Florida, holds, or should be holding, the said sum of money, viz.: $81,361.54, on deposit in its said bank in Jacksonville, Florida. . . ."

The proof shows to the contrary: "That on August 10, 1929, the account of the Peoples Bank of Okeechobee, with the Florida National Bank, was finally closed and from and since August 10, 1929, the said The Florida National Bank has not had and does not now have any money, funds, credits or deposits of any nature or kind whatsoever, theretofore received from said Peoples Bank of Okeechobee," which shows that the account with The Florida National Bank was fully and finally closed on August 10, 1929. The proof is further, that:

"All of the proceeds of the sale of State Road No. 29 bonds that were deposited in The Florida National Bank of Jacksonville, were deposited by and to the credit of Peoples Bank of Okeechobee and subject to its checks and orders and were not deposited by or to the credit of the County of Okeechobee nor were the same subject to the check, draft, warrant or other order of the County, nor did said County ever at any time draw any checks, drafts, warrants, vouchers or orders upon said The Florida National Bank of Jacksonville."

"That no money ever came into the hands of The Florida Bank in connection with the aforesaid agreement of April 10, 1927, except the initial deposit of $480,851.83 made by

and to the credit of Peoples Bank of Okeechobee in April, 1927, all of which was repaid in full to said Peoples Bank and/or its receivers more than two years prior to the institution of this suit."

In the bill of complaint, grave charges of misconduct are made against The Florida National Bank and wrong-doing is attributed to it. It is charged in this connection that D. R. McNeill was the "agent" of The Florida National Bank and that "as its representative," he sought improper action from the county officials in fraud of the county's rights. On this point the averments of the bill are:

"Complainants therefore say that by reason of the irregular release of said pledged and hypothecated securities, which release was improperly secured by the Peoples Bank of Okeechobee, Florida, and in the said The Florida National Bank of Jacksonville, Florida, the complainants . . . have lost the net sum of $81,361.54. . . ."

"The action aforesaid was undertaken at the request of D. R. McNeill, who was President of Peoples Bank of Okeehobee, Okeechobee, Florida, and who then and there acted as the duly authorized representative of The Florida National Bank of Jacksonville, in seeking said action by said Board."

"That said three trustees, namely, the said Board and the said two banks, could not by agreement and connivance, the one with the other, deprive those for whom they were trustees. . . ."

But on the contrary, the proof before the chancellor shows:

"The safe keeping receipts issued by the Federal Reserve Bank and held by the County Commissioners of Okeechobee County were surrendered to The Florida National Bank through the Peoples Bank in regular course of business by United States mail and without any knowledge of said

Florida Bank or any alleged irregular or unlawful action or conduct·on the part of anyone."

"That the Florida National Bank never at any time requested or authorized the Peoples Bank of Okeechobee or D. R. McNeill to request or procure a release or surrender of any of the securities pledged to the County, and The Florida National Bank never had any knowledge that any request for a release or surrender· of securities was ever made."

. Upon the evidence above quoted, the chancellor found that the Florida National Bank had no knowledge of and did not participate in the alleged irregular transaction complained of. The decree recites: "It seems to be established that this meeting was not regularly held and that The Florida National Bank had no knowledge of, or participation in, the transactions then had between the Board of County Commissioners and the representative of the Peoples Bank of Okeechobee. Again from the final decree: ". . . that The Florida National Bank did not participate in the negotiations with the Board of County Commissioners of May 6th, 1929. . . ."

The plaintiff failed to prove the two material averments of the bill above referred to. On the contrary, the proof clearly establishes that these averments are untrue.

On April 10, 1927, The Florida National Bank of Jacksonville, the Peoples Bank of Okeechobee and the Board of County Commissioners of Okeechobee County entered into the following contract:

"This agreement entered into this 10th day of April, A. D. 1927, by and between Florida National Bank of Jacksonville, Florida, Peoples Bank of Okeechobee, Florida, and Board of County Commissioners of Okeechobee County, Florida, has for its purpose the following:

"In consideration of the loan to the Peoples Bank of

Okeechobee by the Florida National Bank of Jacksonville
of $300,000.00 of obligations of the United States of Amer-
ica, and other bonds as represented by Custodian's Receipts
Nos. 1424, for $28,000, 4010 for $50,000, 4113 for $10,000,
4142 for $100,000, 4143 for $75,000, 4150 for $25,000, and
4151 for $25,000 of the Jacksonville Branch of the Federal
Reserve Bank of Atlanta, Georgia, assigned to the Board of
County Commissioners of Okeechobee County, the Peoples
Bank of Okeechobee has directed that the proceeds of the
Okeechobee County Road No. 29 Bond Issue amounting to
approximately $500,000.00 be deposited with the Florida
National Bank of Jacksonville, in an account designated
'Peoples Bank of Okeechobee.' It is understood that the
bonds referred to are to secure the aforesaid deposit and
said funds so deposited are to be withdrawn from the Florida
Bank of Jacksonville, by the Peoples Bank of Okeechobee,
or to be withdrawn by the County Commissioners of Okee-
chobee County, from the Peoples Bank of Okeechobee only
upon surrender by the Board of County Commissioners of
Okeechobee County, to the Florida National Bank of Jack-
sonville, through the Peoples Bank of Okeechobee, of, the
Custodian's Receipts in the following manner:

"None of said Custodian's Receipts shall be released by
said Board of County Commissioners until the aforesaid
deposit with the Florida National Bank of Jacksonville has
been reduced, by withdrawals therefrom by the Peoples
Bank of Okeechobee, to a sum equal to the face value of all
said Custodian's Receipts ($300,000.00). Thereafter the
said Custodian's Receipts shall be surrendered and released
by the Board of County Commissioners of Okeechobee
County, Florida, through the Peoples Bank of Okeechobee,
to the Florida National Bank of Jacksonville, in blocks of
$50,000.00 face value. When the deposit described herein
has been reduced to $300,000.00, $50,000.00 of the Custo-

dian's Receipts shall be released. When the deposit has been reduced to $250,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $200,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $150,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $100,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $50,000.00, the remainder of the Custodian's Receipts shall be released as prescribed herein by the Board of County Commissioners of Okeechobee County to the Florida National Bank of Jacksonville through the Peoples Bank of Okeechobee.

"It is agreed between the parties hereto that the Custodian's Receipts referred to herein shall be kept in a vault for safekeeping, preferably in a lock box on which two keys are required to open, and it is further understood that in the event all or any portion of said Custodian's Receipts are lost or misappropriated by the officials to whom they are delivered by the Peoples Bank of Okeechobee, then the Florida National Bank of Jacksonville, shall deduct from the said deposit a sum equivalent to the par value of such said Custodian's Receipts as are lost or misappropriated."

Under the terms of the agreement, The Florida National Bank of Jacksonville was to be released from obligation thereunder by the reduction of the *deposit* referred to. The evidence before the chancellor was clear that the county, through its officers, the board of county commissioners, had made withdrawals from the Peoples Bank of Okeechobee, to a point below $50,000.00, releasing the Florida National Bank from obligation under the terms of this agreement.

It is contended that The Florida National Bank should be chargeable with two redeposits in the Peoples Bank of Okeechobee after withdrawals had been made of a portion of the

deposit, the subject matter of the said agreement. These two deposits were held by the learned chancellor to be unsecured by the Florida National Bank's contract of April 10, 1927. The evidence before the chancellor is clear and undisputed that these two additional deposits (if they can be said to be deposits) never came into the possession of The Florida National Bank. One of the so-called deposits was a *book credit* as interest by the Peoples Bank of Okeechobee of $2,439.50 entered on the Peoples Bank ledger, and the other so-called additional deposit was a matter of *transferring* on the books of the Peoples Bank of Okeechobee, an item of $31,500.00, by drawing a warrant on another county fund in the Peoples Bank and having the account in question credited with it. There is nothing in the record to show that The Florida National Bank was a party to such transaction or that it had any knowledge of the transaction.

The learned chancellor correctly held that these two items were not properly chargeable against The Florida National Bank, for to hold otherwise as to the latter of these two would be to hold that The Florida National Bank is liable on its express guaranty of a specific deposit in one account for money already on deposit in another and different account, simply because the County had figures transferred on another bank's account books, thereby switching the credits. This can hardly be termed a *deposit* by the County.

But it is contended that the agreement above quoted is *ultra vires*. If the agreement is void, The Florida National Bank, which received the deposit under the *ultra vires* contract, became merely a debtor, and did not become a trustee or co-surety unless there had been fraud or misconduct on its part. See Texas Pacific Railway v. Pattorff, 54 U. S. Sup. Ct. 416, 78 Law Ed. 514. From what has been said before, it is clear that there was no wrong-doing or mis-

conduct proven on the part of The Florida National Bank. When this case was before this Court before (157 So. 570), there was not and could not be a decision on the facts; only the sufficiency of the pleadings was in question, and what was said then could not predetermine whether The Florida National Bank, under the proof, was trustee, debtor, or legally liable in any capacity.

The record does not show any covin, deceit or fraud of any kind on the part of The Florida National Bank so as to make it liable for the acts of the Peoples Bank of Okeechobee. An *ultra vires* pledge of its assets in good faith to secure a deposit of public funds, in another bank, does not create the relationship of trustee, but that of debtor. See Leonard v. Gage, 94 Federal (2nd) 19. See also, the holding by U. S. District Judge STRUM, formerly of this Court, in Ross v. Lee, 15 Fed. Supp. 972.

Moreover, The Florida National Bank, even had it been shown by the evidence to be a co-trustee of the Peoples Bank of Okeechobee, cannot be held legally liable for the acts of the Peoples Bank of Okeechobee. A trustee is not liable to the beneficiary for a breach of trust committed by a co-trustee:

"Where there are two or more trustees, one of them is not liable for a breach of trust committed by another. Each trustee is liable only if he is himself guilty of a violation of a duty to the beneficiary." Scott on Trusts, Vol. 2, Section 224. See also, 26 R. C. L., Trusts, Section 198; Broome v. Mordecai, 117 S. C. 194, 108 S. E. 407; Purdy v. Lynch, 40 N. E. 232.

The loss of the County was occasioned by the closing of the Peoples Bank. The Florida National Bank had no part in this default. From the evidence before the chancellor it was made to appear clearly that The Florida National Bank was at all times acting in good faith. It was not

shown that it had knowledge of the impending insolvency of its co-trustee. Moreover, the learned chancellor's findings, based on the record, establish that The Florida National Bank was guilty of no fraudulent conduct. On the other hand, the beneficiary, the County, by word and conduct, induced The Florida National Bank to turn over the County's assets to the Peoples Bank of Okeechobee, through which the County suffered a loss by reason of the failure of the Peoples Bank.

For the reasons pointed out, the decree of the learned chancellor should be affirmed.

Affirmed.

BROWN, C. J., WHITFIELD, TERRELL and CHAPMAN, J. J., concur.

BUFORD, J., dissents.

THOMAS, J., disqualified.