COUNTY, OF OKEECHOBEE, *et al.,* v. FLORIDA NATIONAL
BANK OF JACKSONVILLE, *et al.*

150 So. 124.
Opinion Filed May 9, 1933.
Opinion on Rehearing Filed October 12, 1933.

*George P. Garrett,* for Appellants;

*Rogers & Towers,* for Appellees.

BUFORD, J.—Suit was filed by the appellants here, County
of Okeechobee, Florida, and F. M. Mobley, J. W. Swain,
A. L. Thompson, W. E. Arnold and F. H. Baggott, as and
constituting the Board of County Commissioners of Okee-
chobee County, Florida, against the Florida National Bank
of Jacksonville, Jacksonville, Florida, and J. P. Cochrane,

as Liquidator of the Peoples Bank of Okeechobee, Okeechobee, Florida.

The bill of complaint was bottomed on a tri-party trust agreement entered into between Florida National Bank of Jacksonville, the Peoples Bank of Okeechobee and the Board of County Commissioners of Okeechobee County, Florida, on the 10th day of April, 1927, in the following language, to-wit:

"THIS AGREEMENT, entered into this 10th day of April, A. D. 1927, by and between Florida National Bank of Jacksonville, Florida, Peoples Bank of Okeechobee, Florida, and Board of County Commissioners of Okeechobee County, Florida, has for its purpose the following:

"In consideration of the loan to the Peoples Bank of Okeechobee by the Florida National Bank of Jacksonville of $300,000.00 of obligations of the United States of America, and other bonds as represented by Custodian's Receipts Nos. 1424, for $28,000, 4010 for $50,000, 4113 for $10,000, 4142 for $100,000, 4143 for $75,000, 4150 for $25,000 and 4151 for $25,000, of the Jacksonville Branch of the Federal Reserve Bank of Atlanta, Georgia, assigned to the Board of County Commissioners of Okeechobee County, the Peoples Bank of Okeechobee has directed that the proceeds of the Okeechobee County Road No. 29 Bond Issue amounting to approximately $500,000.00 be deposited with the Florida National Bank of Jacksonville, in an account designated 'Peoples Bank of Okeechobee.' It is understood that the bonds referred to are to secure the aforesaid deposit and said funds so deposited are to be withdrawn from the Florida Bank of Jacksonville by the Peoples Bank of Okeechobee, or to be withdrawn by the County Commissioners of Okeechobee County, from the Peoples Bank of Okeechobee only upon surrender by the Board of County Commissioners of Okeechobee County,

to the Florida National Bank of Jacksonville, through the Peoples Bank of Okeechobee of the Custodian's Receipts in the following manner:

"None of said Custodian's Receipts shall be released by said Board of County Commissioners until the aforesaid deposit with the Florida National Bank of Jacksonville has been reduced, by withdrawals therefrom by the Peoples Bank of Okeechobee, to a sum equal to the face value of all said Custodian's Receipts ($300,000.00). Thereafter the said Custodian's Receipts shall be surrendered and released by the Board of County Commissioners of Okeechobee County, through the Peoples Bank of Okeechobee to the Florida National Bank of Jacksonville, in blocks of $50,000.00 face value. When the deposit described herein has been reduced to $300,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $250,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $200,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $150,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $100,000.00, $50,000.00 of the Custodian's Receipts shall be released. When the deposit has been reduced to $50,000.00 the remainder of the Custodian's Receipts shall be released as prescribed herein by the Board of County Commissioners of Okeechobee County to the Florida National Bank of Jacksonville through the Peoples Bank of Okeechobee.

"It is agreed between the parties hereto that the Custodian's Receipts referred to herein shall be kept in a vault for safekeeping, preferably in a lock box on which two keys are required to open, and it is further understood that in the event all, or any portion of said Custodian's Receipts

are lost or misappropriated by the officials to whom they are delivered by the Peoples Bank of Okeechobee then the Florida National Bank of Jacksonville shall deduct from the said deposit a sum equivalent to the par value of such said Custodian's Receipts as are so lost or misappropriated.

"THE FLORIDA NATIONAL BANK OF JACKSONVILLE,
"By G. J. Avant, Vice-Pres.
"PEOPLES BANK OF OKEECHOBEE,
"By D. R. McNeil, Pres.
"BOARD OF COUNTY COMMISSIONERS
OF OKEECHOBEE COUNTY, FLORIDA,
"By Ed Alderman, Chairman.
"Attest:
C. E. SIMMONS, Clerk."

We deem it necessary to set out this agreement in full because by its terms the Florida National Bank of Jacksonville and Peoples Bank of Okeechobee became liable jointly for any breach of the trust agreement which may have been committed by them and their joint liability for such breach becomes, in the opinion of the writer, the controlling factor in determining the questions now before us.

It is alleged in the bill of complaint that the agreement was violated by the banks in that the securities hypothecated to protect the fund involved were withdrawn by the Florida National Bank of Jacksonville and released from deposit by the Peoples Bank of Okeechobee without authority and in violation of the trust agreement, particularly in this:

That $40,000 of securities were released on July 3, 1928, when there remained $378,751.46 of the fund on deposit. Again, on September 3, 1928, $50,000 of the securities were released when there remained $305,931.92 on deposit; and so on releases were made of securities contrary to the

trust agreement until the 5th day of June, 1929, at which time there was $91,361.54 on deposit in the fund and only $10,000 of securities to protect the same. This $10,000 of securities was credited on the balance of the fund which left a balance due as alleged in the bill of complaint from the Florida National Bank of Jacksonville and Peoples Bank of Okeechobee, Fla., to the County of Okeechobee the sum of $81,361:54 and the bill of complaint prays for an accounting for the funds and a payment of the same over to the County of Okeechobee.

It will be at once perceived from the above statement that the Florida National Bank and Cochrane, as Liquidator for the Peoples Bank of Okeechobee, are necessary and indispensable parties to this suit.

The Florida National Bank of Jacksonville filed an appearance and thereafter filed its plea of privilege of venue.

We agree with what has been said by Mr. Justice TERRELL in the able opinion prepared by him in this case, that the Florida National Bank of Jacksonville could plead privilege after having filed a general appearance. Plea of privilege is claimed under 12 U. S. C. A., Sec. 94, which is quoted in the opinion written by Mr. Justice TERRELL. We agree that the conclusion reached by Mr. Justice TERRELL would be the proper one in many cases, but the law as enunciated in that opinion, we think, is not applicable to this case because when the Florida National Bank of Jacksonville entered into a tri-party trust agreement with the Peoples Bank of Okeechobee and with the County Commissioners of Okeechobee County concerning a trust fund then existing in Okeechobee County and contracted itself into a joint liability with Peoples Bank of Okeechobee it thereby waived and estopped itself from claiming the privilege of venue accorded to it by the Federal statute above referred to. That such privilege on the part of National

Banks may be waived is stated in the opinion by Mr. Justice TERRELL and authorities are there cited amply supporting the statement. When the Florida National Bank of Jacksonville went into Okeechobee County and there entered into a tri-party agreement with another bank located in that county and with the county commissioners, it drew to that contract the statutes of this State which would and do affect the enforcement of the contract and such statutes are to be read into that contract.

It is too elementary to require a citation of authorities that a Board of County Commissioners can only contract in the county of its domicile and when acting in a regular or special meeting of such board. The Peoples Bank of Okeechobee was contracting in the county of its domicile. Section 2582 R. G. S., 4222 C. G. L., grants to all corporations the privilege of venue in the county where such corporation shall have or usually keeps, an office for the transaction of its customary business. But this privilege may be waived. See Edwards v. Union Bank, 1 Fla. 158; Baker & Holmes Co. v. Indian River State Bank, 61 Fla. 106, 55 Sou. 826.

And so it is, that had the suit here been brought in Duval County, the domicile of the Florida National Bank, we would be constrained to say that the Peoples Bank of Okeechobee or its Liquidator cannot claim the privilege of venue because it had estopped itself from asserting such claim by the terms of its contract.

Sec. 2580 R. G. S., 4220 C. G. L., provides that suits against two or more defendants residing in different counties may be brought in any county or district in which any defendant resides and it is this provision of the statute which both the defendants in this case were charged with notice of at the time they entered into this contract and by entering into the contract they included the provision of

the statute as effectually as if the same had been written into the contract itself. If this be not true, then the complainant below in this case, the appellant here, can never enforce its legal rights for the alleged breach of the contract. Both banks are necessary parties to the suit. The suit could not be maintained against one under the allegations of this bill of complaint without the other being joined in that suit and if the Florida National Bank of Jacksonville may not be sued upon its joint contract in Okeechobee County and Peoples Bank of Okeechobee cannot be sued on its joint contract in Duval County, then there is no jurisdiction in which the complainant may maintain its suit. Therefore, we think that the judgment below should be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

DAVIS, C. J., and WHITFIELD and ELLIS, J. J., concur.

TERRELL and BROWN, J. J., dissent.

TERRELL, J. (dissenting).—Appellants, as complainants, filed their bill of complaint in the Circuit Court of Okeechobee County naming appellees, The Florida National Bank and J. P. Cochrane, as liquidator of the Peoples Bank of Okeechobee, as defendants. Both defendants entered their general appearance to the bill. In due course the Florida National Bank moved to dismiss on the ground of its privilege to be sued only in the county in which it is located, to-wit: Duval County. The motion to dismiss was granted to the Florida National Bank. The present appeal is from that decree.

It is first contended that the Florida National Bank waived its right to be sued in Duval County when it entered its general appearance to the bill.

A general appearance is the means whereby the defendant submits himself unconditionally to the jurisdiction of the

court, while a special appearance has reference to the means by which the defendant submits himself conditionally to the jurisdiction of the court for the purpose of testing the sufficiency of the summons or service made on him for that purpose. This rule as to special appearance has been extended. Rorick v. Stillwell, 101 Fla. 4, 133 So. 609.

The right to be sued in Duval, the county of its location, was a right accorded the defendant under the law and was properly raised by a plea of privilege. It is the settled rule in the Federal courts and in some state jurisdictions that the defendant's right to challenge the venue is waived by entering a general appearance. General Investment Company v. Lake Shores and M. R. S. R. Co., 260 U. S. 261, 67 Law Ed. 244, 43 Sup. Ct. 106, Cyclopedia of Federal Procedure, Vol. 2, Sec. 388, pages 397, 398. A different rule prevails in this jurisdiction. Here the defendant may subsequent to general appearance tender his plea of privilege as to venue unless that right is expressly or impliedly waived by trial on the merits, or by default in pleading after appearance or when a general demurrer to the merits is filed and overruled or by other appropriate action, after which the court has power to enter judgment. Payne v. Ivey, 83 Fla. 436, 93 Sou. 143. In other words, a plea of privilege is a species of plea in abatement and is not a denial of the jurisdiction of the court over the person of the defendant. The filing of a plea to the merits with a plea of privilege is not a waiver of the latter in the absence of anything in the record to so indicate. E. O. Painter Fertz. Co. v. DuPont, 54 Fla. 288, 45 Sou. 507; Nettles v. Gulf Fertz. Co., 78 Fla. 490, 83 Sou. 298; Payne v. Ivey, *supra.*

The general appearance brought in question was in the usual form and was accompanied with no suggestion of waiver of privilege, nor of plea to the merits. This Court

has repeatedly held that under such circumstances the defendant in a transitory or personal action at common law may after the filing of his general appearance interpose a plea of privilege to the venue. Curtis v. Howard, 33 Fla. 251, 14 Sou. 812; E. O. Painter Fertz Co. v. DuPont, *supra*. Payne v. Ivey, *supra*. The same rule prevails in chancery. Russell v. Russell, 86 Fla. 15, 96 So. 288, Sec. 3105 R. G. S. of 1920, Section 4889 C. G. L of 1927.

But it is contended that since the privilege claimed is one of Federal origin the rule of the Federal courts should apply. If suit had been brought in the Federal court this contention would require an affirmative answer, but the rule seems well settled that where a claim of right under a Federal statute is invoked in a state court all matters of practice and procedure are controlled by the law of the forum. Minn. & St. Louis R. Co. v. Bombolis, 241 U. S. 211, 60 Law Ed. 961, 36 Sup. Ct. Rep. 599; Illinois Central R. Co. v. Johnson, 254 U. S. 654, 41 Sup. Ct. 218, 65 Law Ed. 459; St. Louis-San Francisco R. Co. v. Glow Electric Co., 35 Ohio App. 291, 172 N. E. 425; Davis v. Wechsler, 263 U. S. 22, 44 Sup. Ct. 13, 68 Law Ed. 143; Lee v. Central of Georgia R. Co., 252 U. S. 109, 40 Sup. Ct. 254, 64 Law Ed. 482.

We are next confronted with the question of whether or not 12 U. S. C. A., Section 94, according national banks the privilege of being sued only in the county or district in which they are located, has been repealed.

It would seem unnecessary to discuss the question of whether or not 12 U. S. C. A., Section 94, actually granted this privilege when enacted. The Supreme Court of the United States and others have repeatedly held that the privilege of being sued only in the courts of the county or district in which a national bank is located is personal to the bank which it may claim or waive as it deems meet.

First National Bank of Charlotte v. Morgan, 132 U. S. 141, 10 Sup. Ct. 37, 33 Law Ed. 282; Crocker v. Marine National Bank of New York, 101 Mass. 240, 3 Am. Rep. 336; First National Bank of Bethel v. National Pahquioque Bank, 14 Wall. (81 U. S. 383) 20 Law Ed. 840; Raiola v. Los Angeles First National Trust & Savings Bank, 233 N. Y. S. 301, 133 Misc. Rep. 630.

The instant suit was brought in Okeechobee County pursuant to Section 2580 R. G. S. of 1920, Section 4220 C. G. L. of 1927, which in effect provides that suits instituted against defendants living in different counties may be brought in a county where any defendant resides. If 12 U. S. C. A., Section 94, has been repealed this procedure was correct because the defendant, J. P. Cochrane, as liquidator of the Peoples Bank of Okeechobee, resided in Okeechobee County. If, however, 12 U. S. C. A., Section 94, has not been repealed, being the Federal law, it is the dominant authority and must govern.

12 U. S. C. A., Section 94, is as follows:

"Sec. 94. VENUE OF SUITS. Actions and proceedings against any association under this chapter may be had in any district or territorial court of the United States held within the district in which such association may be established, or in any State, County or Municipal Court in any County or city in which said association is located having jurisdiction in similar cases. (R. S. Sec. 5198; Feb. 18, 1875, c. 80, Sec. 1, 18 Stat. 320.)"

The quoted statute was originally Sec. 57 of the Acts of Congress June 3, 1864. It was not included in the U. S. Revised Statutes of 1873, but was re-enacted by Congress in 1875 and is now Section 5198, Second Edition, Revised Statutes of 1875, Vol. 5 Federal Statutes Ann. of 1930, pages 133 and 196. See also Section 9759 U. S. Compiled Statutes (1918) page 1577; Sec. 94, Title 12, United States

Code (1926) and Section 94, Title 12; West Publishing Company 1928 Revision of United States Code.

Appellee contends that 12 U. S. C. A., Section 94, is still in force and controls here while appellant contends that it has been repealed or modified by the Act of Congress of July 12, 1882, being Section 4, Chapter 290, 22 U. S. Statutes at Large, 163, which was in turn repealed or modified by Section 4 of the Act of Congress of August 13, 1888, being Section 785 Barnes Federal Code, 1919, subd. 16, 28 U. S. C. S. Section 41 (16) the pertinent parts of which are as follows:

"Section 4, Act of July 12, 1882 * * *. Provided, however, that the jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers and agent, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun: And all laws and parts of laws of the United States inconsistent with this proviso be, and the same is hereby repealed."

"Section 4, Acts of August 13, 1888. That all national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State.

"The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases

commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank."

The Act in question (12 U. S. C. A. Sec. 94) was originally Section 59, Chapter 58, of the Act of February 25, 1863, 12 Stat. at L. 681, which restricted the venue of actions or suits by or against national banks to any "Circuit, District, or Territorial Court of the United States held within the District" in which said bank is located. Cadle v. Tracey, 11 Blatchf, 101, 4 Fed. Cases 967.

The Act of February 25, 1863, was amended by Section 57, Chapter 106, of the Act of June 3, 1864, 13 Stat. at L. 116 by extending the venue of causes by or against national banks to "any state, county or municipal court in the county or city" in which said bank is located having jurisdiction in similar cases. The Act of 1864 covered the same subject matter as Section 59, Chapter 58, Act of February 25, 1863, and Section 62 of the Act of 1864, was an express repeal of the Act of 1863. Cadle v. Tracey, *supra.*

In the Revised Statutes of the United States adopted December 1, 1873, that portion of Section 57 of the Act of 1864 relating to the venue of state courts over national banks was omitted, but it was restored by the Act of Congress of February 18, 1875, being "an Act to correct errors and supply omissions in the Revised Statutes of the United States." (Section 1, Chapter 80, 18 Stat. at L. 320). First National Bank of Charlotte, N. C., v. Morgan, 132 U. S. 141, 33 L. Ed. 283.

On March 3, 1875, Congress enacted Chapter 137, 18 Stat. at L. 470, being "an Act to determine the jurisdiction of Circuit Courts of the United States, and to regulate the removal of causes from state courts and for other purposes." This Act provides for the removal of causes against national banks on the sole ground of Federal origin

while the Act of February 18, 1875, relates to the venue of suits or actions against national banks. The latter Act has not been materially changed since its enactment, while the Act of March 3, 1875, has been several times amended. The Act of March 3, 1875, apparently had no effect on the Act of February 18, 1875. Leather Mfg. National Bank v. Cooper, 120 U. S. 778, 7 Sup. Ct. 777, 30 Law Ed. 816; Petri v. Commercial Bank of Chicago, 142 U. S. 644, 12 Sup. Ct. 325, 35 Law Ed. 1144.

The Act of March 3, 1875, as applied to national banks, was repealed by the Act of July 12, 1882, 22 Stat. at L. 163, which was an Act to enable national banking associations to extend their corporate existence and for other purposes, the pertinent part of which is quoted, *supra*. The Act of July 12, 1882, relates solely to the jurisdiction of Federal courts and makes no reference to venue. It took from national banks the right to remove causes from state to Federal courts on the sole ground of Federal origin as provided by the Act of March 3, 1875, relating to the venue of such causes. Leather Mfg. National Bank v. Cooper, *supra;* Whittemore v. Amoskeag National Bank, 134 U. S. 527, 10 Sup. Ct. 592, 33 Law Ed. 1002.

The Act of July 12, 1882, was repealed by the Act of August 13, 1888, Chapter 866, 25 Stat. at L. 436, Section 4, of which is quoted, *supra*. The Act of August 13, 1888, was enacted for the sole purpose of correcting errors and omissions in the Act of March 3, 1887, Chapter 373, 24 Stat. at L. 552. The Act of March 3, 1875, the Act of July 12, 1882, and the Act of August 13, 1888, all relate to the same subject matter which is unrelated to the subject matter of the Act of February 18, 1875. *Ex Parte* Jones, 164 U. S. 691, 17 Sup. Ct. 222, 41 Law Ed. 601. Continental National Bank of Memphis v. C. G. Buford, 191 U. S. 119, 24 Sup. Ct. 54, Petri v. Commercial National Bank of Chi-

cago, *supra.* The net result of the holding in these cases, as applied to the instant case is that the Act of March 3, 1875, enabled national banks to invoke the jurisdiction of Federal courts on the sole ground of Federal origin and that said privilege was withdrawn from them by the Act of July 12, 1882, as amended by the Act of August 13, 1888, that "no other purpose can be imputed to Congress than to effect that result" and that if this is correct the Act of February 18, 1875, was not affected by said legislation.

Our review of these enactments also reveals that the Acts of March 3, 1875, July 12, 1882, and August 13, 1888, have appeared in various codes and revisions, but at all times relating to the jurisdiction of Federal courts, while the Act of February 18, 1875, has as often appeared in the codes and revisions, but always relating to the venue of actions against national banks. In fine, it seems clear that each Act performs a different function with reference to national banks, that each has a distinct field of operation and since there is not shown to be a direct repeal of the Act of February 18, 1875, we must decline to hold that it has been repealed by implication.

This view is supported by the fact that 12 U. S. C. A., Section 94, was referred to as an existing statute by Mr. Justice BRANDEIS in Bank of America v. Whitney Central National Bank, 261 U. S. 171, 43 Sup. Ct. 311, 67 Law Ed. 594, and by Mr. Justice VANDEVANTER in First National Bank of Bay City v. Fellows, *ex rel.,* Union Trust Company, 244 U. S. 416, 37 Sup. Ct. 734; 61 Law Ed. 1233. This view is further supported by the fact that the Acts of March 3, 1875, July 12, 1882, and August 13, 1888, take their final form in the judicial code of 1911 as Section 24 (16) Chapter 231, 26 Stat. at L. 1092, and again in 28 U. S. C. A., Section 41 (16), in same form as in judicial code of 1911. See Herrmann v. Edwards, 238 U. S. 107,

35 Sup. Ct. 839, 59 Law Ed. 1224, for discussion of these statutes.

We are also reminded that the Act of 1864 as re-enacted February 18, 1875, now 12 U. S. C. A., Section 94, appeared in the U. S. Code of 1925 which was adopted by an Act of Congress. This fact creates a presumption that the statute is valid and an existing law of the United States which will not give way unless rebutted by competent authority.

Considered in its superlative aspect, the most that can be said of the Act of July 12, 1882, and the Act of August 13, 1888, is that the former provides that the jurisdiction of suits brought against national banks shall be the same as that against banks not organized under Federal law, while the latter provides that for the purpose of actions against them national banks shall be deemed citizens of the state in which they are located. Privilege to be sued in the county where located is a matter of substantive law. It certainly could not be successfully contended that a right of this character would be withdrawn by the Act of August 13, 1888, making national banks citizens of the state where located nor can we imply its withdrawal by the Act of July 12, 1882, fixing jurisdiction for suits against national banks the same as for suits against state banks.

Venue has reference solely to the neighborhood, place or county in which an incident takes place or where a cause of action may be deemed to have accrued, while jurisdiction goes to the power lodged in a court, as distinguished from other governmental agencies, to hear and determine causes and to execute its mandates. The Legislature cannot prescribe the manner in which jurisdiction may be exercised, but it may prescribe the place or venue of its exercise, as was accomplished by the Act of February 18, 1875, which we hold was not repealed by the Act of July 12, 1882, relating to jurisdiction.

As ground for reversal appellant relies on the decision of this Court in Davis, *et. al.*, v. The American National Bank of Winter Haven, decided December 21, 1931. The answer to this contention is that petition for rehearing was duly filed in this cause and pending its disposition the case was by agreement of the parties dismissed. The decision relied on was, therefore, not published and is not the law of the case.

We have examined Leviton v. Houghton National Bank, 174 Mich. 566, 140 N. W. 1019; Guerra v. Lemburg (Tex. Civ. App.) 22 S. W. (2nd) 336; Freeman Manufacturing Company v. National Bank, 160 Mass. 398, 35 N. E. 865, and other cases of like import. The Massachusetts case referred to but did not adjudicate the question raised here. The Michigan and Texas cases disposed of the question similar to that raised here on the thesis that the Federal law providing that jurisdiction of suits against national banks should be the same as that against state banks, repealed the venue provision of the Act of February 18, 1875. This holding vanishes the distinction between jurisdiction and venue, comprehends the latter in the former and repeals by implication a substantive right with a mere mandatory Act that was not intended as a revision of the entire subject matter.

A statute defining jurisdiction may or may not comprehend venue. In our view it should not go to the extent of withdrawing a substantive right by implication only when every reason for conferring that right exists now that existed at the time it was conferred and there still exists a field of operation for both Acts brought in question. First National Bank of Charlotte v. Morgan, *supra,* suggests these reasons.

In this situation it follows that the Act of February 18, 1875, is still in effect. It has not been shown that the Flor-.

ida National Bank waived its privilege to be sued in Duval County, secured thereby.

BROWN, J., concurs.

## ON REHEARING

PER CURIAM.—Upon the rehearing and reargument of this case the Court stands as it originally stood, with reference to the disposition that should be made of this appeal.

The opinion prepared by Mr. Justice BUFORD, adopted and filed by this Court May 9, 1933, is adhered to by a majority of the Court consisting of Mr. Chief Justice DAVIS, Mr. Justice WHITFIELD and Mr. Justice ELLIS. The opinion prepared by Mr. Justice TERRELL and filed as a dissenting opinion on the same date, is adhered to by Mr. Justice TERRELL and Mr. Justice BROWN.

It is therefore considered, ordered and adjudged by this Court that the opinion and judgment prepared by Mr. Justice BUFORD be readopted as the opinion and judgment of a majority of this Court, mandate to issue accordingly in due course pursuant to the rules. It is further ordered that the dissenting opinion of Mr. Justice TERRELL, which is concurred in by Mr. Justice BROWN, be filed and made a part of the record, together with the majority opinion prepared by Mr. Justice BUFORD.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.