Opinion by
 

 Hoffman, J.,
 

 Lewis Charles, Inc. [Charles] entered into an agreement in Philadelphia on October 20, 1965, wherein it agreed to construct a house in Cherry Hill, New Jersey for Donald T. Lapinsohn and Carol Lapinsohn, appellants. On April 27, 1966, appellants and Charles entered a supplemental agreement, in Philadelphia, containing certain warranties and guarantees concerning the construction of this new home. In reliance on these agreements, settlement was made in Philadelphia at that time.
 

 Soon thereafter, appellants noted evidence of improper construction. To secure relief, appellants instituted suit by foreign attachment seeking to attach Charles’ assets in the hands of the First Camden National Bank and Trust Company [Bank], appellee. This Bank is a federally-chartered bank with its principal office in Camden, New Jersey. The Bank also operates a branch bank at 223-225 Market Street, Philadelphia, Pennsylvania. The writ was served on the Bank at its Philadelphia office on November 25, 1966.
 

 The Bank filed preliminary objections on December 5, 1966, alleging that it was immune from suit in Pennsylvania under 12 U.S.C. §91, a federal venue statute which limits actions against national banks.
 

 On December 16, 1966, appellants filed an Answer and New Matter to the Bank’s preliminary objections,
 
 *187
 
 alleging, inter alia, that the Bank, by its conduct, had waived its right to object to such attachment.
 

 On March 21, 1967, depositions were taken of a vice-president of the Bank, and an assistant vice-president who was the manager of the Philadelphia office.
 

 The matter was then heard before the lower court on these preliminary objections and depositions. The court entered an order on May 29, 1967, sustaining the Bank’s objections and dismissing appellant’s complaint in assumpsit on the basis that the Bank could not be made a garnishee in Pennsylvania. This appeal followed.
 

 The sole question raised by this appeal is whether the assets of a depositor in this Bank, which operates a branch bank and office in Philadelphia, may be garnisheed in Philadelphia when the Bank’s principal office and place of incorporation are in Camden, New Jersey.
 

 Section 94 of 12 U.S.C. provides: “Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in simila-r cases.”
 

 The fundamental purpose underlying this venue statute is to protect a federally-chartered bank from being sued in a district or county other than that in which it was originally established and chartered.
 
 Michigan National Bank v. Robertson,
 
 372 U.S. 591 83 S. Ct. 914, 9 L. Ed. 2d 961 (1963);
 
 Mercantile National Bank v. Langdeau,
 
 371 U.S. 555, 83 S. Ct. 520 9 L. Ed. 2d 523 (1963);
 
 Buffum v. Chase National Bank,
 
 192 F. 2d 58 (7th Cir. 1951), cert. denied, 342 U.S. 944, 72 S. Ct. 558, 96 L. Ed. 702 (1952);
 
 Schaefer Sons, Inc. v. Watson,
 
 272 N.Y.S. 2d 790, 26 A.D. 2d
 
 *188
 
 659 (1966);
 
 Raiola v. Los Angeles First National Trust & Savings Bank,
 
 233 N.Y.S. 301, 133 Misc. Rep. 630 (1929). Although the word “established” is used with reference to yenue in the federal courts and the word “located” with regard to venue in state courts, our extensive research reveals that both words have been interpreted to mean the place specified in the organization certificate.
 
 [1]
 

 Schaefer Sons, Inc. v. Watson,
 
 supra.
 

 “As originally conceived under the [National Bank] Act, national banks were not allowed to establish branches. Although the National Bank Act was amended in 1865 to allow state banks already maintaining legally established branches with certain amounts of capital assigned to them to retain their branches and become national banks, it was not intended at that time to permit national banks generally to establish branches.” “An Assault on the Yenue Sanctuary of National Banks,” 31 Geo. Wash. L. R. 765, 768 (1966) [cited hereinafter as 31 Geo. Wash. L. R.].
 

 Since national banks could not establish branches, and since they conducted very little business outside of the general area of their office, it was not unreasonable to restrict suits to the site where that business was conducted. Moreover, the venue statute here involved was passed shortly after the Second National Bank Act, at a time when national banks were in great need of protection from suit. Thus, the purpose of the Act was to protect and afford convenience to the national banks, “and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts.”
 
 First National Bank of Charlotte v. Morgan,
 
 
 *189
 
 132 U.S. 141, 145, 10 S. Ct. 37, 38 (1889); see
 
 Chaffee v. Glens Falls National Bank & Trust Co.,
 
 123 N.Y.S. 2d 635, 204 Misc. 181, affirmed 128 N.Y.S. 2d 539, 283 A.D. 694, appeal denied 129 N.Y.S. 2d 237, 283 A.D. 2d 793 (1953).
 

 In 1927, Congress amended the National Bank Act to permit a national bank, under certain conditions, to effectively compete with state banks by setting up branch banks.
 
 [2]
 
 Section 81 of the Act was also amended in 1927 to read: “The general business of each national banking association shall be transacted in the place specified in its organization certificate
 
 and in the branch or branches, if any, established or main-twined. by it in accordance with the provisions of section 36 of this title.”
 
 [Emphasis indicates amended portion of the statute.] Thus, for the first time, Congress foresaw that national banks might conduct business outside of the county or district of the principal office.
 
 [3]
 
 Yet, the venue provision, enacted in 1864, remained unchanged.
 

 We note that some courts have disregarded this historical background and rigidly fulfilled the literal language of §94 by permitting suit only at the bank’s principal office or location. For example, in 1936, the U. S. Court of Appeals for the Second Circuit affirmed the old concept of “location” as limited to the place specified in the organization certificate.
 
 Leonardi v. Chase National Bank,
 
 81 F. 2d 19 (2d Cir. 1936), cert. denied, 298 U.S. 677 (1936) ;
 
 [4]
 
 see 34 Geo. Wash. L. R.,
 
 *190
 
 supra at 769-770. la most of the suits arising under this provision, however, the bank did not have a branch in a second district or county, but was merely conducting business through an agent or was involved in isolated transactions. E.g.,
 
 Michigan National Bank v. Robertson,
 
 supra.
 
 [5]
 

 In an effort to ameliorate the harsh results of a strict interpretation of §94, several courts found national banks subject to suit on a theory of waiver. “It is well settled that the exemption granted to national banks under §94 is a personal privilege and may be waived by the bank either by failure to assert it or by conduct inconsistent with its retention.” 34 Geo. Wash. L. R., supra at 774; see
 
 First National Bank v. Morgan,
 
 supra.
 

 In several cases involving conduct by banks outside of the district in which they were established some courts, as previously noted, have held that suit could not be brought in such foreign districts. Branch banks, however, were not involved in most of those cases. For example, in
 
 Buffum v. Chase National Bank,
 
 supra, a New York bank conducted business in Illinois with regard to trust accounts. It had registered as a foreign corporation to specifically transact this business. A contract suit, arising out of business wholly
 
 *191
 
 unrelated to its trust transactions, was filed against the bank in Illinois. The U. S. Court of Appeals for the Seventh Circuit held that the bank had only consented to be sued on transactions arising out of the limited trust business and had “. . . evinced no intention to waive in its entirety the privilege it had under the laws of being sued only in New York.” at 61. Nevertheless, the Court cautioned that the privilege accorded national banks could impliedly be waived by conduct “inconsistent with an assertion of retention of the right.” See also
 
 Sulil Realty Corp. v. Rye Motors, Inc.,
 
 257 N.Y.S. 2d 111, 45 Misc. 2d 458, affirmed 262 N.Y.S. 2d 989, 47 Misc. 2d 715 (1965).
 

 On the other hand, several state courts have specifically found a waiver of the right to assert the protective venue statute where a national bank has transacted business in a foreign jurisdiction, even though no branch bank was set up. In
 
 Okeechobee County v. Florida National Bank,
 
 112 Fla. 309, 150 So. 124 (1933), the defendant bank was liable under a tripartite agreement for any breach of a trust agreement in a foreign jurisdiction. The Court held that when a national bank had specifically entered into such an agreement in a district or county other than its charter location, it had thereby waived its right to assert the venue statute by a preliminary objection. Recently, in
 
 Lichtenfels v. North Carolina National Bank,
 
 260 N.C. 146, 132 S.E. 2d 360, 1 A.L.R. 3d 897 (1963), the Supreme Court of North Carolina was faced with a similar problem. There, the bank acted as a testamentary trustee and was sued for mismanagement of the. trust in a county other than the one in which it was established. The bank moved preliminarily to transfer the action to the county of its establishment. The Supreme Court of North Carolina reversed a lower court’s grant of the motion and stated, “undoubtedly they [the bank] sought and accepted the grant of authority conferred
 
 *192
 
 on them by tbe Superior Court of Buncombe County for pecuniary reasons.” Tbe Court reasoned tbat when a bank intentionally conducts business beyond its principal office, it waives any venue protection, just as a person may waive venue requirements in diversity suits.
 
 [6]
 

 Neirbo Co. v. Bethlehem Shipbuilding Corp.,
 
 808 U.S. 165, 60 S. Ct. 153, 84 L. Ed. 167 (1939).
 

 Tbe Supreme Court of tbe United States has also recognized tbe concept of waiver. See
 
 First National Bank of Charlotte v. Morgan,
 
 supra. In tbe recent case of
 
 Michigan National Bank v. Robertson,
 
 supra, Justice Black:, in a concurring opinion, stated tbat a national bank can certainly waive its venue privilege, and thus, it can be sued in any state where it has done business related to the cause of action.
 

 In view of the fact that national banks have set up branches or conduct business in outlying counties or other states, recent decisions have stated that the sanctuary created by the venue statute cannot be absolute. See
 
 Buffum v. Chase National Bank,
 
 supra; 34 Geo. Wash. L. R. 765, supra.
 
 [7]
 
 The most logical reason for
 
 *193
 
 this approach is well stated in
 
 Chaffee v. Glens Falls National Bank & Trust Co.,
 
 supra. There the Court stated, “The inconvenience and the interruptions of banking business thus discussed in 1889 have today been mitigated, if not, in fact, minimized, by present modes of rapid transportation and communication and by mechanical and electronic accounting systems and photostatic and microfilming processes, among others, and the present pre-trial practice and liberalization of the rules respecting documentary evidence have further eased the burden incident to litigation in which banks may be involved. Thus the supposed objective of the statute has been in large part attained through other means. ... To hold that while any bank may quite properly seek loans, trust estates and other business in all parts of the State, those with whom that business is done can sue only in the county of the bank’s domicile, seems an unnecessarily harsh determination.”
 

 We believe this approach to be realistic. If a national bank avails itself of a jurisdiction by setting up a branch to conduct general banking business, it has manifested an intent to be found in that jurisdiction for purposes of suits arising out of any business conducted there. It is to be remembered that the original purpose of the venue restrictions was to limit suits where most of the records were kept and business conducted. But, if a branch can be established to conduct business, there is no logical reason to rigidly apply a statute when doing so actually subverts its purpose.
 

 The instant case is an apt example of where, although suit may be brought at the branch bank, the general policies of the National Bank Act are preserved. The Bank has, since 1928, through a merger, owned and operated a branch bank in Philadelphia. It is a single story bank building which employs six persons, including an assistant vice-president and three tellers. The Philadelphia branch offers a full range of
 
 *194
 
 banking services at this office, which are generally the same as those offered by the Bank at its main office or other branches in New Jersey.
 
 [8]
 
 In other words, it is a “full-service bank.”
 

 In addition, the Philadelphia branch considers itself a competitor of, and in direct competition with other banks in Philadelphia, and actively solicits Phila-' delphia customers. The branch also pays real estate taxes on its Philadelphia property, pays Pennsylvania use tax on property brought in this state, and pays and withholds Philadelphia wage tax on its employees working in Philadelphia.
 

 It is also important to note that deposits in any office of the Bank can be withdrawn at any other office, no matter where the records are kept. All records of savings fund deposits made in the branch are kept at the Philadelphia office. On checking accounts, the Philadelphia office receives up to date records of each account every morning via computers in Camden in order to effectuate this liberal withdrawal service. The vice-president testified that if any account is attached by service on the New Jersey office, such attachment in New Jersey also attaches the account in its Philadelphia office. Thus, the present methods of record keeping utilized by the Bank obviates the primary purpose of the venue statute and, as the depositions clearly indicate, places no burden upon either the branch office or the charter office in Camden.
 

 The instant attachment arises out of the fact that the Bank operates a branch bank in Philadelphia. To the extent that Charles’ funds are made available to
 
 *195
 
 it in Philadelphia by the Bank, they are attachable by service of a writ on the Bank. In normal garnishment and attachment actions, the plaintiff, who secures a judgment against a defendant, becomes the debtor with regard to money originally owed to the defendant. Here, had the Bank maintained only an office which offered loan or mortgage services, it could be argued that its Philadelphia operations were not related to appellant’s attachment. See
 
 Buffum v. Chase National Bank,
 
 supra. The basis of the present attachment, however, is the very fact that the Bank’s Philadelphia operations make the attached funds, a debt owing to Charles, available to Charles in Philadelphia. See
 
 Schaefer Sons, Inc. v. Watson,
 
 supra. Hence, the Bank is quite inextricably tied to one of the parties in the underlying assumpsit suit, and, therefore, fused into the matrix of this action.
 

 For the above reasons, we find that the Bank has waived its right to assert the protective provisions of 12 TT.S.C. §94. The Order of the lower court sustaining the Bank’s preliminary objection is, therefore, reversed, and appellants’ writ of foreign attachment and complaint in assumpsit are reinstated.
 

 Watkins and Montgomery, JJ., dissent.
 

 [1]
 

 The Articles of Assoeation of the First Camden National Bank state that: “The main office shall be in Camden, Camden County, New Jersey. The general business of the Association shall be conducted at its main office and its legally established branches.”
 

 [2]
 

 See 12 U.S.C. §36, as amended.
 

 [3]
 

 See U. S. Cong. Ree. 9890-98 (1932).
 

 [4]
 

 In
 
 Leonardi,
 
 the Bank’s principal office was in the Southern District of New York, but the bank also had a branch in the Eastern District of New York, .upon which the summons was served. The Second Circuit held that, even in light of the amendments to the National Bank Act, the proper place for suit was still where the principal office was located. To support this proposition, the
 
 *190
 
 Court relied on
 
 National City Bank v. Domenech, 71
 
 F. 2d 13 (1st Cir. 1934), wherein it was held that a New York bank with a branch bank in Puerto Rico was “located” in New York for purposes of taxation. That a bank may be taxed in only one place in no way supports the proposition that a bank physicaUy located in another district, cannot be subject to suit. Moreover, such a construction disregards the amendments and legislative history which permitted a national bank to conduct business in more than one location.
 

 [5]
 

 There are relatively few banks having branches in two states because they are now apparently prohibited by 12 U.S.O. 36(c). The branch involved in the instant case was permitted by a grandfather clause in the banking code.
 

 [6]
 

 In
 
 Schaefer Sons, Inc. v. Watson,
 
 supra, the Appellate Division in New York remanded the record in the case for determinations as to the bank’s activities in the county wherein venue was sought to be placed. That case stated that the important elements to take into consideration are the bank’s financial activity in the county, and if a branch is involved, any evidence that indicates an intent to conduct business as part of the community. The majority held that only by making such findings could the Court decide if the bank had waived its protection under the venue statute. The dissent concluded that the bank should be subject to service at a branch bank whenever it is physically located in another county or district.
 

 [7]
 

 One recent article, in reviewing the decisions under 12 U.S.C. §94, stated that: “. . . [I]f the national bank has a branch established for conducting general business in the jurisdiction, the bank is doing sufficient business in that jurisdiction to constitute waiver of section 94.” 34 Geo. Wash. L. R. at 777,
 

 [8]
 

 Some of the services offered are safe deposit boxes, savings accounts, Christmas and vacation clubs, collateral and personal loans, bank by mail services and payroll make-up. In addition, if a customer comes into the Philadelphia office for services not rendered directly in that office, the branch bank will transport him over to Camden to secure these services.