FRANKFORD SUPPLY CO., Inc.
v.
George W. MATTEO, Jr.
and
Madison Development Company
and
Matu, Inc.
and
First Camden National Bank and Trust
Company, Garnishee.
Civ. A. No. 69–373.

United States District Court
E. D. Pennsylvania.
Nov. 13, 1969.

Christopher R. Rosser, Moore, James, Wright & Gibbons, Philadelphia, Pa., for plaintiff.

C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., Archer, Greiner, Hunter & Read, Camden, N. J., for garnishee.

OPINION AND ORDER

WOOD, District Judge.

This is a motion by the garnishee, First Camden, to quash a writ of foreign attachment. Action was initially commenced in the Court of Common Pleas against the defendants to recover approximately $25,000 due but withheld in payment for goods allegedly sold and delivered to the defendants. The action was commenced by writ of foreign attachment, pursuant to Pa.R.C.P. rule 1252(3), 12 P.S. Appendix, and served at the Philadelphia Branch of First Camden, to detain funds in the account of the corporate defendants. The defendants thereafter removed the action to this Court, and after filing its report, the garnishee made the instant motion.

In support of his motion, the garnishee contends that national banks are federal instrumentalities regulated entirely by Congress; that under Section 94 of the Banking Act, 12 U.S.C. § 94, a federally-chartered bank may be sued only in the district or county in which it was originally established or chartered; that First Camden is "established" in Camden, New Jersey, within the meaning of Section 94; that garnishment is an "action" or "proceeding" against the garnishee; that the Pennsylvania venue rules conflict with Section 94 and the federal venue statute must be followed; and that the garnishee First Camden has neither consented to suit in Pennsylvania nor has it waived the benefits of the federal venue statute.

In his brief and at argument, the plaintiff's only contention has been that Section 94 does not immunize the defendants' accounts from garnishment at First Camden's Philadelphia office. Therefore the only issue for decision now is whether immunity pursuant to Section 94 is properly asserted by the garnishee.

12 U.S.C. § 94 provides that:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

The statute was enacted in 1875 "for the convenience of those institutions, and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts." First National Bank of Charlotte v. Morgan, 132 U.S. 141, 145, 10 S.Ct. 37, 38, 33 L.Ed. 282 (1889). Although, as the plaintiff contends, in an age of instant communication and automated banking[1] it would appear that the rationale for immunity from the general venue statutes is no longer compelling,[2] the Supreme Court has recently affirmed prior lower court decisions in holding that a national bank is "established" in the district where its main office (as designated in its organizational certificate) is located, that

[1]. In Lapinsohn v. Lewis Charles, Inc., 212 Pa.Super. 185, 240 A.2d 90 (1968), a similar case involving the same bank, the court found that:
"* * * deposits in any office of the Bank can be withdrawn at any other office, no matter where the records are kept. All records of savings fund deposits made in the branch are kept at the Philadelphia office. On checking accounts, the Philadelphia office receives up to date records of each account every morning via computers in Camden in order to effectuate this liberal withdrawal service. The vice-president testified that if any account is attached by service on the New Jersey office, such attachment in New Jersey also attaches the account in its Philadelphia office. * * *" 212 Pa. Super. 185, 194, 240 A.2d 90, 95.
It is therefore difficult to perceive any functional burden on First Camden regardless of which of its branches is served with a writ of attachment.

[2]. In this connection, see the discussion of the history of the Act in Lapinsohn v. Lewis Charles, Inc., supra. See also "An Assault on the Venue Sanctuary of National Banks," 34 Geo.Wash.L.R. 765, 768 (1966).

national banks may be sued only in the district where the bank is established, and that revision of the statute is a matter for Congress. Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 561–563, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963). However, the exemption granted to national banks under Section 94 is a personal privilege and it may be waived by the bank either by failure to assert it or by conduct inconsistent with its retention. Buffum v. Chase National Bank, 192 F.2d 58 (7th Cir. 1951); Lapinsohn v. Lewis Charles, Inc., 212 Pa.Super. 185, 240 A.2d 90 (1968); Mercantile National Bank at Dallas v. Langdeau, *supra*.[3] We agree with the court in *Lapinsohn* which in a similar case involving the garnishment of accounts in the First Camden branch in Philadelphia stated that "if a national bank avails itself of a jurisdiction by setting up a branch to conduct general banking business, it has manifested an intent to be found in that jurisdiction for purposes of suits arising out of any business conducted there."[4] 212 Pa. Super. 185 at 193, 240 A.2d 90, 94–95. It is agreed here that as in that case the Philadelphia branch of First Camden is a "full service bank" offering the full range of banking services that are offered at all of its New Jersey branches; that it competes with other Philadelphia banks in active solicitation for Philadelphia customers; that deposits in any office of the bank can be withdrawn at any other office, no matter where the records are kept; and that records of accounts are kept up to date in all offices via computer. We therefore think that First Camden has manifested an intent to be found in Philadelphia, and that to the extent to which the funds of the defendants are available to them in Philadelphia, they are attachable by service of a writ on the First Camden Philadelphia bank.

### ORDER

And now, this 13th day of November, 1969, it is ordered that the garnishee's motion to quash the writ of foreign attachment is denied.

---

3. *Buffum* is cited with approval by the Supreme Court in *Langdeau* at 371 U.S. 563, fn. 13, 83 S.Ct. 520.

4. There are relatively few banks having branches in two states because 12 U.S.C. §§ 36(c) and 81 apparently make it illegal and ultra vires for a national banking association to have any branch offices (except foreign branches) in any state of the Union other than that in which it is incorporated. *Cf.* International Refugee Org. v. Bank of America Nat. Trust & Sav. Ass'n, 86 F.Supp. 884, 885–886 (S.D.N.Y.1949). The branch involved in the instant case, however, was permitted by a grandfather clause in the banking code.

The situation before us, namely, where a national bank has a branch outside its state of incorporation, is therefore a somewhat anomalous one. We make no comment as to the possible application of *Buffum* to other circumstances where the bank's activities in another state do not amount to "full service."