HELCO, INC., and JAMES W. POTTER, Plaintiffs

v.

FIRST NATIONAL CITY BANK, Defendant

Civil No. 142-1971

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 23, 1971

BAILEY, WOOD and ROSENBERG, ESQS. (FREDERICK D. ROSENBERG, ESQ., of counsel), Charlotte Amalie, St. Thomas, V.I., *for the plaintiffs*

LOUD, CAMPBELL and DENNENBERG, ESQS. (ROGER L. CAMPBELL, ESQ., of counsel), Charlotte Amalie, St. Thomas, V.I., *for the defendants*

CHRISTIAN, *Chief Judge*

## OPINION

Plaintiffs, Helco, Inc., and James Potter have brought suit against First National City Bank, defendant, on an

account and for damages. The dispute grows out of an undertaking by the corporate plaintiff to construct a dwelling house for defendant. Potter is president of Helco, Inc.

In its present posture, the cause is before the Court on defendant's motion to quash service of process and to dismiss the complaint.

Two grounds are asserted in support of defendant's motion. Firstly, that the District Court of the Virgin Islands is not a "district court of the United States" within the purview of 12 U.S.C. sec. 632; and secondly, that the venue provision of 12 U.S.C. sec. 94 is a complete bar to this suit as the defendant, being a national bank, may be sued only in the district in which it was chartered, that district being the Southern District of New York.

The first ground on which defendant relies has been repeatedly brought up in this Court and has been as often struck down as asserted.

As here pertinent, section 632 provides,

Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district court of the United States shall have original jurisdiction of all such suits;

■ The statute admittedly speaks in terms of "district courts of the United States," and there is no pretense that this court comes within that category as a court created under Chapter 5 of Title 28 of the United States Code. Nonetheless, once more relying on the unqualified grant of jurisdiction given this Court in the Revised Organic Act

284

of the Virgin Islands,[1] I conclude that the District Court of the Virgin Islands is fully competent to hear and determine civil suits contemplated in section 632, a law of the United States. I draw additional strength for this conclusion from the very wording of section 632 for it is specifically framed to include,

. . . all suits of a civil nature . . . arising ·out of . . . banking in a dependency or insular possession of the United States . . . .

The venue provisions (section 94), moreover, authorize proceeding in ". . . any district or Territorial Court of the United States . . . ." These pointed references, in terms so clear, firmly lay to rest, for this case at least, the oft raised challenge to this Court's jurisdiction.

The declared bar of 12 U.S.C. sec. 94 poses a far more serious and vexing problem, one that has been a bone of contention for now over a century. Defendant has mustered an imposing array of authority in support of the immunity from suit in this district which it urges. Indeed on highest authority defendant confidently states that

. . . a national bank is a "citizen" of the state in which it is established or located . . . and in that district alone can it be sued.[2]

Yet, "circumstances alter cases", and with this adage in mind, I briefly examine the statute, its history, decided cases and relate all of this to the action at bar.

The venue provision of Title 12, here under consideration reads,

Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdic-

---

[1] The District Court of the Virgin Islands shall have the jurisdiction of a district court of the United States in all causes arising under the Constitution, treaties and laws of the United States, regardless of the sum or value of the matter in controversy.
See also Ferguson v. Kwik-Chek Winn-Dixie Stores, Inc., 7 V.I. 639, 643 (D.C.V.I. 1970).
[2] Cope v. Anderson, 331 U.S. 461, 467 (1947).

tion in similar cases. R.S. § 5198; Feb. 18, 1875, c. 80, § 1, 18 Stat. 320; Mar. 3, 1911, c. 231, § 291, 36 Stat. 1167.

Despite the fact that the language of the statute is literally permissive rather than mandatory, all federal courts and most state courts which have construed section 94 have held that nationally chartered banks may be sued only in the district in which they are "established", and have taken for granted that a bank is established only at the place cited in its charter. Mercantile National Bank v. Langdeau, 371 U.S. 555, at 562, n. 13; Michigan National Bank v. Robertson, 372 U.S. 591; and cf. Bruns v. American National Bank, 394 F.2d 300 (2nd Cir. 1968). Thus while respected courts have expressed dissatisfaction with this narrow reading of the statute, the widely conceded interpretation of the statute sets venue solely in the district of charter.

The basis of the criticism of strict application of section 94 involves both historical analysis and policy considerations. A passing glance at the history and policy of the National Bank Act sheds meaningful light on the fundamental motion of immunity outside of the district of charter, as well as the evolution of the manifestly narrow interpretation of section 94.

Under the statutory predecessors of section 94 (The National Bank Act of 1864) national banks were required to specify in their charters their usual place of business and this was the site of the bank's "location" or "establishment". Manufacturer's National Bank v. Baack, 16 Fed. Cas. 671 (No. 9052) (C.C.S.D. N.Y. 1871). The statutes originally did not allow a national bank to maintain any branches away from its charter location, and consequently the companion venue restriction was reasonable. First National Bank v. Missouri, 263 U.S. 640, at 657–58 (1924); and see Scheflin and Dixon, "An assault on the Venue Sanctuary of National Banks," 34 Geo. Wash. L.R.

765, at 765–772. Because these restrictions imposed on expansion were having severe impact on national banks in competition with state banks, the national banks were gradually granted authority to conduct business affairs through branch banks outside their charter district. 44 Stat. 1228, as amended, 12 U.S.C. sec. 36 (1964); 48 Stat. 190, as amended, 12 U.S.C. sec. 36 (1964). However, this evolution in the national banks' authority was not accompanied by a corresponding modification of judicial view on the banks' right to insist on being subject to suit only at their charter locations. With the advent of branch banks, it would have been expected that the courts would similarly expand the concept of "location" for venue purposes, but they did not, continuing instead to cite prior cases as precedent for restricted venue without regard to the intervening legislative change. Leonardi v. Chase National Bank, 81 F.2d 19 (2nd Cir. 1936).

As a matter of policy, the congressional intent in enacting the restrictive venue statute for actions against national banks was to prevent the "interruption in business that might result from their books being sent to distant countries in obedience to process from state courts." First National Bank v. Morgan, 132 U.S. 141, 145 (1889). However, with the introduction and development of branch banking in the national bank system, the records of relevant data are often widely decentralized.

"Thus a transaction may take place at a branch distant from the parent bank, and the records and officers concerned may be located at that branch. In such a case, the policy of the venue provision—to protect control and centralization of the records and to ensure continuity of business—seems applicable. The policy in fact may be better served if the action is commenced in the judicial district in which the branch is located since there would be less 'interruption' of the bank's business than if the records were transported to the charter location." (Scheflin and Dixon, "An Assault on the Venue Sanctuary of National Banks," 34 Geo. Wash. L.R. 765, at 772.)

It is also relevant that with modern methods of instant communication, computerized records, and simplified duplicating, a national bank's central records are unlikely to be significantly disrupted by distant legal proceedings. (Scheflin, supra, n. 65.) With due regard to the foregoing criticism, section 94 might best be read to apply to a national bank's location at either its charter site or its branches. Several courts have expressed such a preference (U.S. National Bank v. Hill, 434 F.2d 1019, 1020 (9th Cir. 1970); cf., Bruns v. American National Bank, 394 F.2d 300, 303; and see Scheflin, supra, at 771–772), but the consensus of judicial opinion is that the contrary rule is too firmly established to permit such a reading. U.S. National Bank v. Hill, supra; Buffum v. Chase National Bank, 192 F.2d 58 (7th Cir. 1951); Leonardi v. Chase National Bank, 81 F.2d 19 (2nd Cir. 1936), cert. denied, 298 U.S. 677.

The mentioned consensus, notwithstanding, were this court pressed to meet the issue head on, I would in all probability, strike out in the opposite direction for it might not be at all inappropriate to set the machinery in motion for a new look at the accepted interpretation of section 94.[3] It is, in my opinion, more than time for reexamination of this harsh rule which has outlived the reason for its existence by already far too many years. I could hardly accept as the true congressional purpose the unqualified intent, and for all time, to deny

. . . a person in one State the privilege of filing suit in his own State against an out-of-state company where service can be obtained and where the suit arises out of a transaction within the State.[4]

---

[3] Such a new look might well be from the vantage point of due process. If fair play is indeed the essence of due process, Galvan v. Press, 347 U.S. 522 (1954), then this narrow-gauged reading of section 94 strikes at its roots.

[4] Michigan National Bank v. Robertson, supra., Mr. Justice Black joined by Mr. Justice Douglas concurring, at p. 595.

However, my disposition of this case on other grounds makes it unnecessary for me to determine the applicability of the accepted rule of immunity to the facts of this particular situation, and thus the larger constitutional issue is avoided.

█ I take it to be quite clear that the protection which section 94 affords a national bank may be waived, the privilege being purely personal rather than jurisdictional. The United States Supreme Court has so indicated. Michigan National Bank v. Robertson, supra; First National Bank v. Morgan, supra. Such waiver may be demonstrated expressly or may be found by implication from conduct of the bank either prior to or during the litigation in question. Buffum v. Chase National Bank of New York, supra. But what precise conduct will be deemed to constitute a waiver, has not been firmly decided. See Anno. 1 A.L.R.3rd 904. Certain conduct has been included in the concept and other conduct excluded, giving some outline to the theory in application.[5] Thus, for example, in Frankford Supply Co., Inc. v. Matteo, 305 F.S. 794 (E.D. Pa. 1969), in an action brought in Pennsylvania against a bank with a charter site in New Jersey, where the bank had a branch in Pennsylvania which, as the court found, offered "the full range of banking services that are offered at all of its . . . branches; that it compete[d] with other [local] banks in active solicitation for . . . customers; that deposits in any office of the bank [could] be withdrawn at any other office, no matter where the records [were] kept," (at p. 796) the defendant bank was held to have waived its immunity from suit, the court concluding,

---

[5] This is a basis for jurisdiction independent of the argument that a local branch "establishes" the national bank within section 94's definition. When waiver is found, section 94 does not apply.

289

we think that [the bank] has manifested an intent to be found in [this district] (at p. 796).

So also in Lapinsohn v. Lewis Charles, Inc., 212 Pa. Super. 185, 240 A.2d 90 (1968), cert. denied 393 U.S. 952, a national bank chartered in New York was held to have waived its venue protection by establishing a full service branch bank in Pennsylvania, the forum state. The Court reasoned,

"If a national bank avails itself of a jurisdiction by setting up a branch to conduct general banking business, it has manifested an intent to be found in that jurisdiction for purposes of suits arising out of any business conducted there. It is to be remembered that the original purpose of the venue restrictions was to limit suits where most of the records were kept and business conducted. But if a branch can be established to conduct business, there is no logical reason to rigidly apply a statute when doing so actually subverts its purpose. (at pp. 94–95.)

Understandably, where contacts with the forum state have been minimal, courts have consistently declined to find a waiver on the part of the national banks. Such was the case in International Refugee Organization v. Bank of America, 86 F.S. 884 (S.D. N.Y. 1949), where suit in the Southern District of New York was dismissed at the instance of the bank, chartered in the Northern District of California. Defendant bank had no branch in New York but merely an office and a representative for the convenience of its stockholders and customers. And again in Buffum v. Chase National Bank of New York, supra, the court declined to find a waiver, on the part of a bank chartered in New York in a suit brought in Illinois.

The bank's only contact with the forum was an unrelated transaction whereby it participated in certain trusts and consented to suit in Illinois as to any business transacted with regard to those trusts. The plaintiff's suit was brought on an entirely different cause of action and the court found

that the bank had not waived its venue protection generally, but only as to the specific trusts. The court did acknowledge, however, that more extensive involvement by the bank with the forum district could constitute a waiver of section 94.[6] For other cases in which waiver could not be ascribed because of insufficient forum contact, see Tuthill v. George S. May Int'l. Co., 285 N.Y.S.2d 317 (   ); Sulil Realty Corp. v. Rye Motors, Inc., 257 N.Y.S.2d III (Sup. Ct. 1965); Stewart v. First National Bank, 93 Mont. 390, 18 P.2d 801 (1933); Hills v. Burnett, 125 N.W.2d 66 (1963).

▪ Returning then to the instant action we encounter a situation which very closely parallels the Frankford and Lapinsohn cases on the facts. This defendant is unquestionably a national bank, with a charter location in the Southern District of New York. It is equally indisputable that defendant engages in full service banking in the Virgin Islands, having two branches in the division of St. Thomas and St. John of this Court and three in the division of St. Croix. This defendant advertises extensively for banking business in this district and is in hot competition for that business with all other banks. Presumably, it provides for withdrawal of funds from its mainland branches by its Virgin Islands customers through its local branches. It involves itself in local fiscal affairs and solicits and accepts the advantages and protections afforded local institutions,

---

[6] The court in Buffum used severe language to define waiver, insisting that where waiver is to be implied from conduct, the conduct must be such that no other explanation but voluntary relinquishment of a known right would be possible. Yet it may be argued that the true legal concept involved is estoppel, an approach which has rarely been articulated in connection with venue restrictions. (See 45 F.R.D. 470, 1968.) In a sense, none of the "waiver" cases represent actual voluntary surrender of a right, but rather conflicting equities and reasonable reliance by a community on a national bank's apparent "establishment" there. Whichever theory is used, however, it would seem that a bank with such substantial connections with a district as a full-service branch should not be allowed to interpose a theoretical "absence" whenever confronted with litigation.

including the accommodation of filing suits in this forum relating to matters growing out of its banking activities.[7] The parties to this suit are indeed physically here as are whatever records that may be pertinent to this suit. There is no threat of disruption of this defendant's business and operation at its charter location. On all counts, the suit can proceed more expeditiously in this forum.

I find that this defendant has abundantly manifested an intent to be found in this district. In the totality of the circumstances of this case, the conclusion is inescapable that the defendant has waived the venue protection of section 94. The motion to quash service and to dismiss the complaint will accordingly be denied.

---

[7] First National City Bank v. Caribe Chemical Company, Inc., Civ. No. 94-1971, a debt action filed in the division of St. Croix, and First National City Bank v. Gottlieb, Civil No. 399-1970, debt and foreclosure action in the division of St. Thomas and St. John.